McCLELLAN ECOLOGICAL SEEPAGE
SITUATION; Mary Fisher; Charles
Yarbrough, Plaintiffs–Appellants,

v.

William J. PERRY,* Secretary of
the United States Department of
Defense, Defendant–Appellee.

McCLELLAN ECOLOGICAL SEEPAGE
SITUATION; Mary Fisher; Charles
Yarbrough, Plaintiffs–Appellees,

v.

William J. PERRY,* Secretary of the
United States Department of Defense,
Defendant–Appellant.

Nos. 91–16308, 91–16467.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 1994.

Decided Jan. 30, 1995.

* William J. Perry is substituted for his predecessor, Les Aspin, as Secretary of Defense. Fed. R.App.P. 43(c)(1).

Michael Axline, Western Natural Resource Law Clinic, Eugene, OR, for plaintiffs-appellants-appellees.

Ellen J. Durkee, U.S. Dept. of Justice, Washington, DC, for defendant-appellee-appellant.

Before: FLETCHER, ALARCON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

This is an action brought by McClellan Ecological Seepage Situation ("MESS") to require McClellan Air Force Base to comply with various environmental laws. The district court ruled against MESS and MESS appealed. The Secretary of Defense cross-appealed on the ground that MESS's appeal was untimely—a contention that we reject.[1]

After hearing argument, we remanded the case to the district court for certain findings regarding the jurisdiction of the federal courts to entertain many of MESS's claims. The district court determined that most of MESS's claims, brought under the Resource Conservation Recovery Act, 42 U.S.C. §§ 6901–6992 ("RCRA"), the Clean Water Act, 33 U.S.C. §§ 1251–1387, and several California state environmental statutes, must

---

1. The district court granted MESS's motion to extend the time for appeal on the ground of excusable neglect. The government's motion to dismiss the appeal was denied by a motions panel of this court on the ground that the appeal time had not begun to run because the entry date of the final judgment did not appear on the court docket. The government correctly states that we may revisit the decision of the motions panel.

See United States v. Houser, 804 F.2d 565, 568–69 (9th Cir.1986). We do so, but reject the government's cross-appeal because we conclude that the district court did not abuse its discretion in implicitly finding excusable neglect. See Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. Partnership, — U.S. —, — – —, 113 S.Ct. 1489, 1496–98, 123 L.Ed.2d 74 (1993).

be dismissed for lack of jurisdiction. The findings indicate that the Department of Defense is engaged in a cleanup at McClellan Air Force Base, conducted pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601–9675 ("CERCLA" §§ 101–405),[2] and that the bulk of MESS's claims constitute an impermissible challenge to that cleanup.

After again hearing argument, we accept the district court's Findings and Determination with respect to all of MESS's claims relating to inactive waste storage sites being cleaned up by McClellan pursuant to CERCLA. We therefore vacate the original judgment, and instruct the district court to dismiss those claims for lack of jurisdiction. We agree with the district court that jurisdiction exists over the remaining claims, which are all challenges relating to active sites excluded by the CERCLA Plan. We remand those claims for further consideration by the district court.

## BACKGROUND

Since the 1930's, McClellan Air Force Base has served as an aircraft depot and maintenance center for the Army, and subsequently the Air Force. The repair and maintenance of our military aircraft have always required the use of toxic and hazardous materials which, after they have served their purpose, become hazardous wastes requiring disposal.[3] Until 1976, McClellan disposed of large quantities of its wastes by burying them in earthen pits on the Base. During the several preceding decades, operations at McClellan generated a great deal of uncontained hazardous waste, some of which leached into the groundwater beneath the Base.

In 1979, McClellan began a groundwater monitoring program as a first step in its cleanup of Base contamination. When Congress enacted CERCLA in 1980, the McClellan cleanup continued under the authority of the Department of Defense's Installation Restoration Program, pursuant to CERCLA Section 104. In compliance with requirements of the Superfund Amendments and Reauthorization Act of 1986, which amended CERCLA, McClellan again modified its cleanup program to conform to a now-required Interagency Agreement between the Air Force, the federal Environmental Protection Agency ("EPA") and the State of California. The Agreement bound McClellan to incorporate all applicable legislative requirements into its cleanup through a Management Action Plan. McClellan's cleanup effort has proceeded under the authority of both CERCLA and the Interagency Agreement since the Agreement's effective date of May 2, 1990.

A major component of McClellan's CERCLA cleanup plan is its groundwater extraction system. The system allows contaminants to leach from the inactive waste pits into the groundwater. The groundwater is then mechanically extracted and treated. Through this "leach-extract-treat" cycle, all contaminants are expected to be removed from the inactive pits, and migration of contaminated groundwater away from the Base to be prevented.

On April 23, 1986, MESS brought this action against the Secretary of Defense, alleging that McClellan's past and present treatment, storage and disposal of hazardous wastes violated RCRA, the Clean Water Act, the California Health and Safety Code, the California Water Code, and the California Fish and Game Code. MESS sought declaratory relief, civil penalties, and an injunction against any further treatment, storage, discharge or disposal of hazardous wastes at McClellan until all federal and state hazardous waste requirements were met. The district court, as we have said, denied MESS's claims on the merits.

On appeal, the Secretary raised for the first time a threshold jurisdictional issue, arguing that CERCLA Section 113(h) denies

---

2. As amended by the Superfund Amendments and Reauthorization Act of 1986, codified as amended at 42 U.S.C. §§ 9601–9675.

3. Some of the wastes generated at McClellan over the years include industrial solvents, caustic cleaners, heavy metals, polychlorinated biphenyls (PCBs), oils and lubricants, contaminated jet fuel, low-level radioactive wastes, electroplating chemicals and several volatile organic compounds (VOCs).

federal courts the jurisdiction to entertain MESS's challenge to the ongoing CERCLA cleanup action at McClellan. We remanded to the district court to develop the record further with regard to the progress and scope of CERCLA activities at McClellan, and to determine whether MESS's claims constituted a challenge to the CERCLA cleanup, placing them beyond federal court jurisdiction. The district court found that "a comprehensive cleanup effort is currently underway at [McClellan]," and determined that each of MESS's claims for relief that were directed at sites now undergoing cleanup activities constituted challenges to CERCLA remedial and removal actions. The court thus concluded that CERCLA Section 113(h) bars those challenges. With respect to RCRA compliance for current and future waste disposal operations at McClellan, the district court found that Section 113 does not bar MESS's claims.

MESS disputes the district court's determination, arguing first that Section 113 applies neither to citizen suits nor to actions brought under non-CERCLA statutes. MESS also contends that even if Section 113 does apply to the present action, none of MESS's claims constitute "challenges" to the CERCLA cleanup effort at McClellan, because MESS merely seeks compliance with existing RCRA and Clean Water Act standards that McClellan is already bound to follow. We address each argument in turn.

## ANALYSIS

### I. Scope of CERCLA § 113(h)

■ Section 113(h) of CERCLA provides:

(h) **Timing of review**

No Federal court shall have jurisdiction under Federal law ... or under State law ... to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:

\* \* \* \* \* \*

(4) an action under section 9659 of this title (relating to citizen suits) alleging that

the removal or remedial action *taken* under section 9604 of this title or *secured* under section 9606 of this title *was* in violation of any requirement of this chapter. . . .

\* \* \* \* \* \*

42 U.S.C. § 9613(h) (emphasis supplied). On its face, then, section 113(h) precludes contemporaneous challenges to CERCLA cleanups. MESS interprets this section, however, to mean that federal courts are jurisdictionally barred from reviewing *only those challenges to CERCLA cleanup actions brought under CERCLA provisions.* In our view, however, section 113(h) is not so limited.

Section 113(h) is clear and unequivocal. It amounts to a "blunt withdrawal of federal jurisdiction." *North Shore Gas Co. v. E.P.A.,* 930 F.2d 1239, 1244 (7th Cir.1991). Contrary to MESS's position, the unqualified language of the section precludes "any challenges" to CERCLA Section 104 clean-ups, not just those brought under other provisions of CERCLA. *See Arkansas Peace Ctr. v. Department of Pollution Control,* 999 F.2d 1212, 1217 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994) (holding that section 113(h) bars a challenge based upon RCRA); *North Shore Gas,* 930 F.2d at 1244 (same).

MESS alternatively contends that Section 113(h) withdraws federal jurisdiction only for challenges brought by potentially responsible parties, and does not affect actions brought under the citizen suit provisions of environmental statutes. This argument is contradicted by the plain words of the statute. The prohibitory language of Section 113(h) does not distinguish between plaintiffs. The statute divests federal courts of jurisdiction over "any challenges" to removal or remedial actions under CERCLA. If the prohibitory language did not include citizen suits, there would have been little need for the exception in subsection (h) for citizen suits challenging *past* cleanup actions. MESS's reliance on legislative history to show that congressional intent differs from the statute's plain wording is not persuasive.[4] We therefore con-

---

4. Because the statutory language is so clear,

MESS must overcome a strong presumption that

clude that Section 113 withholds federal jurisdiction to review any of MESS's claims, including those made in citizen suits and under non-CERCLA statutes, that are found to constitute "challenges" to ongoing CERCLA cleanup actions.

MESS expresses concern that waste storage and disposal site operators like McClellan might try to avoid RCRA liability by hiding under the protective umbrella of a CERCLA cleanup plan. MESS and amici[5] argue that in this situation, affected citizens would never have recourse for the resulting RCRA violations, and pollution would go unchecked.

Whatever the theoretical potential for an evasion of RCRA in other cases, it does not exist here. McClellan's Management Action Plan incorporates the requirements of all relevant hazardous waste legislation. *See* McClellan Air Force Base Interagency Agreement §§ 1.2(e), 6.1, and 17 (signed July 21, 1989); Findings and Determination RE: Jurisdiction, p. 11 (October 23, 1993). The parties to the Agreement clearly intended that McClellan be bound by these requirements. The Management Action Plan is a comprehensive scheme that takes into account all applicable statutory requirements, including those of RCRA and the Clean Water Act, and coordinates compliance with each. McClellan therefore has, without question, an obligation to comply with substantive RCRA and Clean Water Act requirements.

It is true that MESS is now unable to obtain immediate judicial review of McClellan's compliance with RCRA, the Clean Water Act, and similar statutory requirements during the course of the cleanup program, but this inability was Congress's choice. Although judicial review is an important element in the enforcement of laws such as RCRA and the Clean Water Act, Congress has determined that the need for swift execution of CERCLA cleanup plans outweighs this concern. Section 113(h) protects the execution of a CERCLA plan *during its pendency* from lawsuits that might interfere with the expeditious cleanup effort. This result furthers the policy underlying CERCLA by allowing a quick response to serious hazards. *See Boarhead Corp. v. Erickson,* 923 F.2d 1011, 1018–19 (3d Cir.1991). Congress concluded that the need for such action was paramount, and that peripheral disputes, including those over "what measures actually are necessary to clean-up the site and remove the hazard," may not be brought while the cleanup is in process. *Id.* at 1019.

We recognize that the application of Section 113(h) may in some cases delay judicial review for years, if not permanently,[6] and may result in irreparable harm to other important interests. Whatever its likelihood, such a possibility is for legislators, and not judges, to address. We must presume that Congress has already balanced all concerns and "concluded that the interest in removing the hazard of toxic waste from Superfund sites" clearly outweighs the risk of irreparable harm. *Id.* at 1023.

Having concluded that Section 113(h) would bar any of MESS's claims that challenge the CERCLA effort at McClellan, we must now determine which, if any, of the claims actually comprise "challenges" to the cleanup within the meaning of the statute. Because the effects of each of MESS's claims upon the cleanup are distinct, we analyze them separately.

## II. The "Inactive" Waste Pits and RCRA Compliance

Although MESS's complaint sought various forms of injunctive relief, MESS now seeks primarily to compel McClellan's compliance with RCRA's individual reporting and permitting requirements, in addition to the Interagency Agreement's comprehensive re-

---

the plain language of the statute expresses Congress' intent. *See Ardestani v. INS,* 502 U.S. 129, 135–37, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991). For MESS's purposes, the legislative history of Section 113(h) is, at best, unclear.

**5.** Amici States of Alaska, Connecticut, Hawaii, Indiana, Illinois, Kansas, Kentucky, Montana, Ohio, Oklahoma, Texas and Utah filed a brief on behalf of MESS.

**6.** We do not here decide whether or to what extent the district court can entertain MESS's various claims after implementation of the CERCLA cleanup at McClellan is complete.

quirements.[7] MESS argues that, in seeking such relief, it does not challenge the CERCLA cleanup plan.

We agree with McClellan, however, that such relief would constitute the kind of interference with the cleanup plan that Congress sought to avoid or delay by the enactment of Section 113(h). The Interagency Agreement now integrates RCRA obligations into its own reporting requirements. The parties to the Agreement deemed those reporting requirements to be sufficient; MESS clearly wants more. The additional reporting requirements that MESS would have us impose would second-guess the parties' determination and thus interfere with the remedial actions selected under CERCLA Section 104.

To an even greater degree, an injunction or declaration requiring McClellan to comply with RCRA permitting requirements would also interfere with the CERCLA cleanup. As McClellan points out, the entire purpose of a permit requirement is to allow the regulating agency to impose requirements as a condition of the permit. The injection of new requirements for dealing with the inactive sites that are now subject to the CERCLA cleanup (or McClellan's defense against imposition of such requirements) would clearly interfere with the cleanup.

It is true, as MESS argues, that every action that increases the cost of a cleanup or diverts resources or personnel from it does not thereby become a "challenge" to the cleanup. The enforcement of minimum wage requirements, for example, might increase the cost of a cleanup and even divert personnel from cleanup duties without becoming a challenge to the cleanup. MESS's lawsuit, however, is far more directly related to the goals of the cleanup itself than is the hypothetical minimum wage action. MESS, for all practical purposes, seeks to improve on the CERCLA cleanup as embodied in the Interagency Agreement. Its action qualifies as a "challenge" to the cleanup.

## III. Inactive Waste Pits and Clean Water Act Compliance

 MESS alleges, and McClellan does not dispute, that contaminants from the inactive pits continue to leach downward into groundwater beneath the Base. This leaching, according to MESS, constitutes a "point discharge" of pollutants into "waters of the United States" which, without an authorization permit, violates 33 U.S.C. § 1311 (Clean Water Act). MESS would require McClellan to procure a Clean Water Act permit authorizing all leaching from the inactive pits. The relief sought would also compel McClellan's compliance with individual state notification requirements for contaminant discharge. Absent the permit and compliance, MESS would prohibit any discharges.

McClellan has amply demonstrated that the leaching in question is closely connected to the CERCLA action. The leaching process is a necessary component of the CERCLA plan's groundwater extraction system, which was designed to prevent migration of contaminants away from McClellan. Any delay or interruption of the process will slow the cleanup action, a. result that Congress sought to avoid in enacting Section 113(h). The district court found that claims focusing on the groundwater underlying the Base were "directed at an integral part of the cleanup and, as such, may not be sustained until cleanup is completed." We agree with the district court that MESS's Clean Water Act and state water law claims, as they pertain to leaching of contaminants, are challenges to the continuing CERCLA response and are consequently beyond federal jurisdiction.

 A slightly different question exists with regard to McClellan's alleged discharges of pollutants into surface waters. MESS asserts in its complaint that contaminants from the inactive pits discharge laterally, through perched groundwater, seeps and pipes, into the Magpie Creek at points where it crosses the Base. McClellan responds that because the sources of the alleged contaminants, the inactive pits, are subjects of the

---

7. 42 U.S.C. § 6930 (RCRA § 3010) requires the operator of a hazardous waste treatment, storage or disposal facility to file specific reports; 42 U.S.C. § 6925 (RCRA § 3005) requires a permit for any such facility.

CERCLA response action and its attendant Management Action Plan, the surface water contamination claims also should be barred. We agree.

The source of the alleged surface water contaminants is not dispositive of MESS's claim. What is dispositive, however, is the court's inability to fashion any remedy that would not interfere with McClellan's CERCLA groundwater extraction system. While the contaminants allegedly destined for Magpie Creek are moving laterally through the soil, unlike the downward-leaching pollutants, it is impossible to require any Clean Water Act compliance measure to remedy lateral contaminant discharges from the pits that would not actively "challenge" CERCLA activities directed at remedying the downward discharges. MESS's claims pertaining to discharge via seepage and pipes into Magpie Creek therefore are excluded from federal court jurisdiction.

### IV. McClellan's Current Operations

■ MESS also claims that "current operations" at McClellan are not in compliance with RCRA permitting requirements. We accept the district court's determination that the Interagency Agreement does not cover McClellan's active sites. Findings and Determination RE: Jurisdiction, p. 26. Section 113 thus does not bar MESS's claims asserting RCRA noncompliance at those active sites. Some dispute existed between the parties both in briefing and at oral argument over what the term "current operations" included. In order to clarify the limits of our holding, we also adopt the district court's characterization of "current operations" as those involving active waste treatment and storage sites not covered by the Interagency Agreement.

When the district court entered its original judgment, it purported to determine all claims. Because the jurisdictional bar of Section 113(h) of CERCLA had not been asserted before the district court at that time, the court did not differentiate in its opinions between those sites that were subject to the CERCLA cleanup plan and those "active" sites that were not. It is accordingly not clear to us now just what claims

remain relating to the "active" sites not covered by the cleanup plan, and what disposition, if any, the district court already may have made of those claims.

That determination is a difficult one no matter who makes it. We conclude, however, that the district court is in the best position to secure the active participation of the litigants in determining exactly what, if anything, is left of this case. We therefore remand the matter to the district court for determinations concerning: (1) the extent of MESS's claims not precluded by Section 113(h) of CERCLA or otherwise abandoned; (2) the degree to which the district court has already ruled on those claims: and (3) any further determinations (with or without evidentiary proceedings) that the district court deems appropriate or necessary to dispose of this case and enter a new final judgment.

### CONCLUSION

The district court correctly determined that CERCLA Section 113(h) withholds federal jurisdiction to review citizen suits and actions brought under other, non-CERCLA statutes that challenge ongoing CERCLA cleanup actions. The court was also correct in finding that all of MESS's claims for relief connected with McClellan's inactive pits and sites were challenges to McClellan's CERCLA cleanup. Finally, we accept the district court's determination that MESS's claims against the active waste storage sites are not barred by Section 113(h).

We vacate the original judgment of the district court and remand this matter to the district court with instructions to dismiss MESS's claims relating to the inactive sites for lack of jurisdiction, and to conduct any further proceedings the district court deems necessary or appropriate to resolve and enter final judgment regarding MESS's claims relating to active sites. Each party will bear its own costs.

**VACATED AND REMANDED WITH INSTRUCTIONS.**