Pamela DURFEY; Paulene Echo Hawk; Dorothy George, Plaintiffs–Appellants,

v.

E.I. DuPONT DE NEMOURS COMPANY; General Electric Company, a New York corporation; UNC Nuclear Industries Inc., a Delaware corporation; Atlantic Richfield Company, a Delaware corporation; Rockwell International Corporation, a Delaware corporation; Westinghouse Hanford Corporation, a Delaware corporation; Westinghouse Electric Corporation, a Pennsylvania corporation, Defendants–Appellees.

No. 94–35371.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1995.

Decided July 5, 1995.

Merrill G. Davidoff, Berger & Montague, Philadelphia, PA, for plaintiffs-appellants.

David M. Bernick, Kirkland & Ellis, Chicago, IL, for defendants-appellees.

Before: SKOPIL, FERGUSON, and DAVID R. THOMPSON, Circuit Judges.

FERGUSON, Circuit Judge:

The present case arises out of the events and litigation in Yakima County, Washington, surrounding the Hanford Nuclear Reservation ("Hanford"). Pamela Durfey, Paulene Echo Hawk, and Dorothy George appeal the district court's dismissal of their state medical monitoring tort[1] claims for lack of subject matter jurisdiction, the denial of their motion to remand to state court, and the district court's consolidation of their

---

**1.** Medical monitoring is a recently recognized tort providing damages or equitable relief to plaintiffs who have yet to suffer a cognizable toxic tort injury, but who are able to demonstrate that they face an increased risk of such an injury as a result of a defendant's actions. *See, e.g., In re Paoli R.R. Yard PCB Litig.,* 916 F.2d 829, 852 (3rd Cir.1990) (recognizing the weight of authority behind adopting a common law tort of medical monitoring), *cert. denied,* 499 U.S. 961, 111 S.Ct. 1584, 113 L.Ed.2d 649 (1991).

claims with the *In re Hanford* litigation. *In re Hanford Nuclear Reservation Litigation*, 780 F.Supp. 1551 (E.D.Wash.1991).

The district court concluded that it lacked subject matter jurisdiction to hear plaintiffs' claims because the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9613(h) ("CERCLA § 113(h)"), bars judicial review of "challenges" to ongoing federal agency "removal" or "remedial" actions as premature. The district court believed that plaintiffs' medical monitoring claims are "challenges" to the health-related activities being conducted at Hanford by the Agency for Toxic Substances and Disease Registry ("ATSDR"). As a result, the district court held that plaintiffs' claims cannot be brought until ATSDR completes its work at Hanford. We reverse.

## BACKGROUND

Hanford is a U.S., government-owned, contractor-operated, plutonium production site. Hanford opened in 1944 as part of the U.S. war effort to develop an atomic bomb. As a result of the plutonium production at Hanford, quantities of iodine–131 and other radioactive substances were released into the surrounding areas of eastern Washington.

In May 1989, prior to Hanford's designation as a Superfund site,[2] the Department of Energy, the Environmental Protection Agency, and the Washington State Department of Ecology entered into an agreement establishing the agencies' intent to undertake a comprehensive program to clean up the Hanford sites. The Department of Energy subsequently released a report in 1990 documenting the past releases of radioactive sub-

stances from Hanford. Following the publication of the Department of Energy report, five separate class action suits were filed against the current and former operating contractors of Hanford. Plaintiffs were not a party to any of these suits. In 1991 the U.S. District Court for the Eastern District of Washington consolidated the five suits into the *In re Hanford* litigation. *In re Hanford*, 780 F.Supp. at 1555 n. 1 (consolidating claims brought under 42 U.S.C. § 2014(hh)).

The consolidated *In re Hanford* litigation involved a variety of claims ranging from personal injury to property damage and business losses. Included among the *In re Hanford* claims were claims for the tort of medical monitoring. *In re Hanford*, 780 F.Supp. at 1562 n. 17 (explaining that the medical monitoring claims were brought under the alternative legal theories of the common law tort of medical monitoring and the liability provisions of 42 U.S.C. § 9607(a) ("CERCLA § 107(a)")). The district court concluded that medical monitoring claims are premature "challenges" to an ongoing federal agency response provided for by 42 U.S.C. § 9604(i) ("CERCLA § 104(i)") and dismissed all the medical monitoring claims for lack of subject matter jurisdiction pursuant to CERCLA § 113(h). *In re Hanford*, 780 F.Supp. at 1564–65.

Following the district court's dismissal of the *In re Hanford* medical monitoring claims, plaintiffs filed this class action suit for relief in the Superior Court for Yakima County, Washington, in July 1993. Plaintiffs allege only the common law tort of medical monitoring.

The defendants removed the action to the federal district court in accord with the provisions of the Price–Anderson Act.[3] 42

**2.** CERCLA requires the President to create a National Priorities List establishing the order of priority for the cleanup of national hazardous waste sites. 42 U.S.C. § 9605(a)(8)(B). Adding a site to the National Priorities List designates it as a Superfund site. Four sites at Hanford were designated as Superfund sites in September 1989.

**3.** The Price–Anderson Act provides that:
With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district

where the nuclear incident takes place ... shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy. Upon a motion of the defendant or of the Commission, or the Secretary, as appropriate, any such action pending in any State court ... or United States district court shall be removed or transferred to the United States district court having venue under this subsection ...

U.S.C. §§ 2210(n)(2), 2014(hh). Upon removal, the district court consolidated plaintiffs' cause of action with the *In re Hanford* litigation. Based on its earlier rulings, the district court dismissed plaintiffs' medical monitoring claims for lack of subject matter jurisdiction as premature "challenges" to an ongoing federal agency response. 42 U.S.C. § 9613(h). In addition, the district court denied remand of plaintiffs' claims to the state court based on the Price–Anderson Act. 42 U.S.C. § 2210(n)(2). Plaintiffs assert that 28 U.S.C. § 1447(c) requires a federal district court which finds that it lacks subject matter jurisdiction over a removed action to remand that action to state court. We need not reach the latter question as the district court has subject matter jurisdiction over plaintiffs' medical monitoring claims.

## DISCUSSION

We have jurisdiction over the present appeal pursuant to 28 U.S.C. § 1291. *Huene v. United States*, 743 F.2d 703, 705 (9th Cir. 1984) (holding that where judgment resolves only one of several consolidated cases, appeal is proper upon certification pursuant to Fed. R.Civ.P. 54(b)). We review the question of subject matter jurisdiction *de novo. Nike, Inc. v. Comercial Iberica De Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990 (9th Cir. 1994). All of the district court's factual findings on jurisdictional issues must be accepted as true unless they are clearly erroneous. *Id.*

Plaintiffs argue that medical monitoring is not a "response" cost under CERCLA § 107(a)(4)(B). This issue is critical to plaintiffs' claims as CERCLA defines "response" as a "... removal ... [or] remedial action." 42 U.S.C. § 9601(25). Because CERCLA § 113(h) bars judicial review of "challenges" to federal "removal" or "remedial" actions, plaintiffs' claims would be barred until the Hanford cleanup was complete if medical monitoring were found to be a "response" cost under CERCLA § 107(a)(4)(B).

Defendants contend that the ATSDR's medical surveillance and health-related activities at Hanford are "removal" or "remedial" actions which will provide the very medical monitoring that plaintiffs seek to secure through their class action suit.[4] The district court accepted defendants' arguments and stated that plaintiffs' medical monitoring claims "challenge" a "removal" or "remedial" action under CERCLA. As a result, the district court held that it was barred by CERCLA § 113(h) from exercising jurisdiction over plaintiffs' claims. However, when the district court made its original decision in 1991, this circuit had not yet ruled on whether medical monitoring constitutes a "response" cost within the meaning of CERCLA § 107(a)(4)(B).

CERCLA, as amended by the 1986 Superfund Amendments and Reauthorization Act ("SARA"), was enacted to facilitate the cleanup of hazardous waste sites around the country. In order to accomplish this purpose, CERCLA creates administrative mechanisms to respond to the dangers posed by hazardous waste sites and also establishes the respective rights and duties of governmental entities and private parties involved in the cleanups. *See Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1533 (10th Cir.1992) (citations omitted). At issue in this appeal are CERCLA provisions § 113(h), which is intended to prevent impeding cleanup activities with premature challenges to those activities, and § 107(a), which is intended to expedite cleanups by shifting the liability for cleanup costs to responsible parties.

CERCLA § 113(h) divests a district court of jurisdiction over actions deemed to be premature challenges to ongoing cleanup activities. Section 113(h) provides in critical part that:

No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 ... or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any

---

42 U.S.C. § 2210(n)(2). 42 U.S.C. § 2014(hh) defines "public liability action," as used in § 2210, as "any suit asserting public liability."

4. Defendants-appellants' motion to supplement the record is denied.

*challenges to removal or remedial action selected under section 9604* of this title ...

42 U.S.C. § 9613(h) (emphasis added). Thus, if medical monitoring were a "removal" or "remedial" action, then medical monitoring claims would "challenge" "removal" or "remedial" actions and would be barred by CERCLA § 113(h) until completion of the cleanup activities.

CERCLA § 107(a) provides that responsible parties may be sued for "any other necessary costs of response ..." 42 U.S.C. § 9607(a)(4)(B). CERCLA does not define "any other necessary costs of response" but defines "response" as meaning a "removal ... [or] remedial action". 42 U.S.C. § 9601(25). Intended as interim solutions, "removal" is defined in critical part as:

> the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary to *monitor,* assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or *the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare* or to the environment, which may otherwise result from a release or threat of release ...

42 U.S.C. § 9601(23) (emphasis added). "Remedial actions", while intended as permanent solutions, are similarly defined as:

> those actions consistent with permanent remedy taken instead of or in addition to removal actions ... The term includes, but is not limited to ... *any monitoring reasonably required to assure that such actions protect the public health and welfare* and the environment ...

42 U.S.C. § 9601(24) (emphasis added).

■ The district court relied on the latter language to conclude that medical monitoring is a "response" cost. However, in *Price v. U.S. Navy,* 39 F.3d 1011, 1016–17 (9th Cir. 1994), this court held that medical monitoring costs are *not* "response" costs under CERCLA. This court, relying on the Tenth Circuit analysis in *Daigle,* reasoned that:

the context in which the "monitoring" and "health and welfare" language appears is directed at containing and cleaning up hazardous substance releases ... The specific examples in § 9601(23) are all designed to prevent or mitigate damage to public health by preventing contact between the spreading contaminants and the public. Monitoring long-term health has nothing to do with preventing such contact.

*Price,* 39 F.3d at 1016–17. In addition, this court reviewed the legislative history behind CERCLA and found that "Congress intentionally deleted all personal rights to recovery of medical expenses from CERCLA," and that ATSDR activities are reimbursed separately from the payment of "response" costs. *Id.* at 1017 (quoting *Daigle,* 972 F.2d at 1536–37).

Defendants argue that ATSDR is likely to perform medical monitoring sometime in the future, prior to the completion of the Hanford cleanup. While ATSDR is statutorily required to perform a "health assessment" at every Superfund site in the United States, 42 U.S.C. § 9604(i)(6)(A), ATSDR is only required to administer a "health surveillance" (medical monitoring) program *if* the ATSDR Administrator has determined that there is a significantly increased risk for an affected population.[5] 42 U.S.C. § 9604(i)(9). While defendants may wish to rely on ATSDR's future activities at Hanford, Congress has not required potentially injured parties to do so. CERCLA contains no reference to recovering personal medical expenses.

In addition, the government is able to recover costs incurred by the ATSDR under a separate cause of action. 42 U.S.C. § 9607(a)(4)(D). In light of these factors, it is clear that medical monitoring costs are not "response" costs under CERCLA. *Price* 39 F.3d at 1017.

■ Despite our conclusion that medical monitoring is not a "response" cost, defendants would have us rely on our recent decision in *McClellan Ecological Seepage Situation v. Perry,* 47 F.3d 325 (9th Cir.1995), to conclude that plaintiffs' medical monitoring

5. To date, ATSDR has yet to undertake any medical monitoring activities anywhere in the country. Appellee's Oral Argument, *Durfey v. DuPont,* No. 94–35371 (9th Cir. May 4, 1995).

claims, nevertheless, "challenge" the "response" activities at Hanford. Defendants rely on the *McClellan* Court's finding that "challenge" should be read to include those situations in which the lawsuit is "directly related to the goals of the cleanup" in issue. *McClellan,* 47 F.3d at 330. While defendants are correct in pointing out that one of the goals of the Hanford cleanup is establishing the effects on and dangers to human health posed by Hanford, we do not read this as directly related to the goal of monitoring individuals with a demonstrated increased risk of injury to ensure the timely detection of hazardous waste induced illness. *McClellan* is not inconsistent with our present holding.

Because plaintiffs' medical monitoring claims do not "challenge" any federal "removal" or "remedial" action, they are not barred by CERCLA § 113(h), and the district court has jurisdiction to hear them. The district court erred in dismissing plaintiffs' claims for lack of subject matter jurisdiction. Consolidation with the other *In re Hanford* litigation was, however, appropriate. We reverse and remand to the district court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.