68 F.3d 481
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
PEOPLE OF the STATE OF CALIFORNIA, Plaintiff-Appellee,
v.
H & H SHIP SERVICE COMPANY, a California Corporation, dba H
& H Environmental Services, Defendant-Appellant.
 No. 94-10182.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 14, 1995.
Submission Vacated March 8, 1995.
Resubmitted Sept. 22, 1995.
Decided Oct. 17, 1995.
 
 Before: REINHARDT, THOMPSON, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 H & H Ship Service Company ("H & H") challenges its conviction under section 5650(f) of the California Fish and Game Code, which prohibits the release of substances deleterious to fish, plants, or birds into state waters. H & H also challenges the district court's order that it pay restitution to the State of California ("the State") and the County of Alameda ("the County"). We affirm H & H's conviction. However, we reverse the restitution awards and remand for further proceedings on that issue.
 
 I.
 
 3
 As a threshold matter, we must consider whether the district court properly asserted jurisdiction over this case. We conclude that jurisdiction lay under the federal officer removal statute, 28 U.S.C. Sec. 1442(a)(1). This statute provides that:
 
 
 4
 A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
 
 
 5
 (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.
 
 
 6
 Where the defendant is not a federal officer, three criteria must be satisfied to warrant removal under this statute. First, the defendant must show that he is a person who was acting under a federal officer. Second, he must demonstrate the he was acting under color of that officer's authority. Maryland v. Soper, 270 U.S. 9, 33 (1926). Finally, the defendant must raise a colorable federal defense. Mesa v. California, 109 S. Ct. 959, 964 (1989). We consider each of these requirements in turn.
 
 A.
 
 7
 The most difficult question is whether either H & H or its co-defendant Jeffrey Lucas qualifies as a person "acting under" an officer of the United States.[1] In support of their petition for removal, Lucas and H & H asserted that they were acting under a federal officer, because their actions were taken as part of a removal action supervised by the United States Coast Guard. CERCLA authorizes the President to arrange for the removal of hazardous substances when necessary to protect the public health or welfare. 42 U.S.C. Sec. 9604(a). The President has delegated this authority to the Coast Guard for spills occurring in coastal areas. 52 Fed. Reg. 2923; see also 40 C.F.R. Sec. 300.120. Acting pursuant to this authority, Roger Alan Davis of the Coast Guard assumed on-scene command over the removal and directed AN-FO to contain the spill. AN-FO, in turn, hired H & H to clean up the phosphoric acid. The Coast Guard approved a plan for containing the acid by using sandbags, neutralizing the acid with caustic soda, and then pumping it into a vacuum truck.
 
 
 8
 The problem is that, in performing the acts for which they were prosecuted -- the removal of the sandbags -- the defendants were apparently acting contrary to the removal plan approved by the Coast Guard. Nevertheless, these acts occurred while the defendants were acting under the authority of a federal officer. While the Coast Guard did not instruct the defendants to remove the sandbags, the defendants were present at the site in order to execute a removal that was under the direction and control of a federal officer. Lucas and H & H were therefore "acting under" the Coast Guard, even though the specific acts at issue were contrary to the Coast Guard-approved plan.
 
 B.
 
 9
 In addition to showing that they were acting under a federal officer, section 1442(a)(1) permits removal only for an "act under color of such office." The Supreme Court has interpreted this to require a showing of some "causal connection" between what the defendant has done under official authority and the state prosecution. Soper, 270 U.S. at 33. It is enough for the defendants to show that their "acts or presence at the place of performance of official duty constitute the basis, though mistaken or false, of the state prosecution." Id. In this case, the actions that form the basis of prosecution were taken during the course of a removal action that was under the direction and control of the Coast Guard, acting pursuant to its authority under CERCLA. This is sufficient to show that the defendants were acting under color of federal office.
 
 C.
 
 10
 Finally, section 1442(a)(1) requires that the defendant raise a colorable federal defense. Mesa, 109 S.Ct. at 964. In this case, the defendants argued that their prosecution under California Water Code Sec. 13376 was barred by federal regulations. Section 13376 prohibits the discharge of pollutants without a permit. Federal regulations promulgated under CERCLA provide that: "No federal, state, or local permits are required for on-site response actions conducted pursuant to CERCLA sections 104, 106, 120, 121, or 122." 40 C.F.R. Sec. 300.400(e)(1). After this case was removed, the district court dismissed this count, apparently convinced by the defendants' argument that federal regulations provided a defense to prosecution under section 13376.
 
 
 11
 The asserted federal defense was not only colorable but apparently meritorious. The district court had discretion to retain jurisdiction over the case, even after the count that provided the basis for jurisdiction was dismissed. Watkins v. Grover, 508 F.2d 920, 921 (9th Cir. 1975). We therefore conclude that the district court properly removed and retained jurisdiction over this action under the federal officer removal statute.[2]
 
 II.
 
 12
 H & H challenges its conviction on two grounds. First, it argues that, in considering its alleged violation of the California Fish and Game Code, the district court should only have considered evidence contained in the administrative record compiled by the Coast Guard. H & H relies upon section 113 of CERCLA, 42 U.S.C. Sec. 9613(j)(1), which states: "In any judicial action under this chapter, judicial review of any issues concerning the adequacy of any response action taken or ordered by the President shall be limited to the administrative record. Otherwise applicable principles of administrative law shall govern whether any supplemental materials may be considered by the court." By the terms of this section, H & H's argument fails. CERCLA section 113(j)(1) applies only to "judicial action(s) under this chapter." This is not a judicial action under CERCLA, but a criminal prosecution under the California Fish and Game Code. Because this is not a CERCLA action, the district court was entitled to consider evidence outside the administrative record.
 
 III.
 
 13
 H & H next argues that the conviction for violation of section 5650(f) of the California Fish and Game Code must be reversed because the State failed to demonstrate the requisite harm to marine life. Section 5650 states, in relevant part:
 
 
 14
 It is unlawful to deposit in, permit to pass into, or place where it can pass into the waters of this State ...
 
 
 15
 (f) Any substance or material deleterious to fish, plant life or bird life.
 
 
 16
 While H & H does not dispute that it permitted phosphoric acid to pass into the waters of the state, it argues that the State has failed to make the showing of harm required under the statute, as construed in People v. Guntert, 179 Cal. Rptr. 426 (Ct. App. 1981). In Guntert, the Appellate Division stated: "a substance or material is deleterious if, because of its nature or quantity, it has a harmful effect on fish, plant life or bird life when it is deposited in the waters of the state of California." Id. at 429. H & H argues that, under Guntert, the State must demonstrate not only that phosphoric acid was capable of harming marine life, but that the release did in fact cause such harm.
 
 
 17
 We do not agree with H & H's argument. We think that it is the nature of the substance that is dispositive, not proof of its effect during a particular spill. Moreover, even if we were to accept H & H's interpretation of the statute, the State made a sufficient showing that the phosphoric acid it released had a harmful effect on marine life. The district court found that:
 
 
 18
 Phosphoric acid is highly toxic to fish, plant life, and birds. Some such damage had occurred prior to the arrival of the Coast Guard, the various agencies and the defendant. Defendant's acts caused such damage to be extended and prolonged.
 
 
 19
 The evidence adduced at trial supports the district court's finding. A toxicologist with the Regional Water Quality Control Board, testified that the substance released by the defendant lowered the pH of the estuary and increased "the periphery of damage." He further testified that the release would contaminate the food chain, eventually reaching fish and human beings. In addition, a water quality biologist testified that the effect of the acid release "without a doubt ... would be deleterious." This testimony is sufficient to sustain the conviction for releasing a substance deleterious to marine life, in violation of section 5650(f).
 
 IV.
 
 20
 Finally, H & H challenges the district court's order of restitution. The court ordered restitution in the amount of $54,405.00 for damage done to clams in the estuary. It also ordered H & H to pay $3,226.83 to the California Department of Fish and Game and $2,510.88 to the Alameda County Hazardous Materials Training and Trust Fund, as restitution for time spent by state and county employees investigating the release and preparing for trial. We reverse the $54,405.00 award and remand for a determination of the amount of loss that resulted from H & H's actions. We simply reverse the $3,226.83 and $2,510.88 awards.
 
 A.
 
 21
 The maximum punishment for a violation of section 5650(f) is a $1,000 fine, imprisonment for not more than six months, or both. Cal. Fish & Game Code Sec. 12002(a). However, the California Constitution requires that restitution be "ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary." Cal. Const. art I, Sec. 28. Section 1203.04 of the Penal Code, which implements this constitutional provision, provides that the court "shall require, as a condition of probation" that restitution be paid to the victim, if the crime involves a victim. If the crime does not involve a victim, restitution cannot exceed $1,000 and is made to the State's Restitution Fund. Included in the statutory definition of "restitution" is "full or partial payment for the value of stolen or damaged property." Cal. Penal Code Sec. 1203.04(d).
 
 
 22
 In this case, H & H argues that its crime does not involve a victim and, consequently, that restitution must be limited to $1,000. We disagree. The State can be considered a victim, for purposes of ordering restitution. See People v. Crow, 26 Cal. Rptr. 2d 1, (1993) (upholding restitution to state for losses resulting from welfare fraud); People v. Narron, 237 Cal. Rptr. 693, 696-97 (Ct. App. 1987) (upholding restitution to state for expenses incurred disposing of controlled substances). Even if we assume that restitution is limited to direct victims, it is clear that the State falls into this category. Prior to sentencing, the People introduced evidence that 83,700 clams were destroyed as a result of the release. The People claim, and H & H does not dispute, that the State owns the tidelands (of which the estuary is a part) where the clams were in situ. Cal. Const. art. X Sec. 3. Because the clams were by their nature confined to the state's property during their natural existence, the state had dominion over them, and they were its property. See McKee v. Gratz, 260 U.S. 127 (1922). Accordingly, the court was authorized to award restitution to the state under section 1203.04(a)&(d).
 
 
 23
 Although we conclude that restitution for the value of the clams destroyed by H & H was proper, the district court erred in determining that amount. The $54,405.00 in restitution ordered appears to represent the total value of all the clams that were killed in the spill -- and not just those killed as the result of H & H's actions. H & H should only be required to make restitution for the value of clams for whose destruction it was liable. We remand for redetermination of the appropriate amount of restitution.
 
 B.
 
 24
 The district court also ordered H & H to pay $3,226.83 to the State's Fish and Game subaccount, as restitution for the time that Fish and Game employees Sheree Foster and Michael Rugg spent investigating the release, preparing for trial, and testifying at trial. The court ordered that $2,510.88 be paid to the Alameda County Hazardous Materials Training and Trust account for time spent by county employee Larry Seto preparing for trial, and trial costs incurred by the County District Attorney's office.
 
 
 25
 While the People concede that the costs incurred by the District Attorney are not reimbursable, they argue that restitution for the time of Foster, Rugg, and Seto was proper. In support of their position, the People cite section 1203.04(d) of the Penal Code, which defines restitution to include "wages or profits lost due to injury or to time spent as a witness or in assisting the police or prosecution ...." The People do not argue that Seto, Foster, or Rugg lost any wages for the time they spent investigating the release, preparing for trial, and testifying. Nor did these employees -- or the State or County by which they are employed -- lose any profits. Rather, these public employees assisted in the prosecution of this case as part of their job duties.
 
 
 26
 There is no authority for the proposition that the State or County is entitled to compensation for the time that its employees spend assisting in criminal prosecutions. In fact, California law prohibits the inclusion of prosecution costs in an award of restitution. People v. Gangemi, 17 Cal. Rptr. 2d 462, 465-66 (Ct. App. 1993); People v. Baker, 113 Cal. Rptr. 248, 253-54 (Ct. App. 1974). As noted in Gangemi, if the legislature had intended the convicted criminal to pay for costs incurred by the police or prosecution in bringing him to justice, it had ample opportunity to say so. 17 Cal. Rptr. at 254. There is no California precedent for awarding restitution to a governmental agency for the time its employees spend assisting in the investigation and prosecution of crimes as part of their job duties. We therefore reverse the awards to the State and County for time spent by their employees related to this case.
 
 V.
 
 27
 We affirm H & H's conviction. However, we reverse the award of $54,405.00 in restitution for natural resource damage, and remand for a determination of the value of the clams for whose destruction H & H was liable. We also reverse the restitution awards of $3,226.83 to the State and $2,510.88 to the County.
 
 
 28
 AFFIRMED in part; REVERSED in part.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The court was entitled to assert jurisdiction over the prosecution of both defendants, if one of them was entitled to removal under section 1442(a)(1). Watkins v. Grover, 508 F.2d 920, 921 (9th Cir. 1975)
 
 
 [2]
 Relying on our recent decision in McClellan Ecological Seepage Situation v. Perry, 47 F.3d 325 (9th Cir. 1995) ("MESS"), H & H suggests that CERCLA Sec. 113(h), 42 U.S.C. Sec. 9613(h), withdraws federal jurisdiction over cases like this one. We disagree. MESS holds that CERCLA Sec. 113(h) withdraws federal jurisdiction to review challenges to "ongoing CERCLA cleanup actions." Id. at 331. This case does not involve an ongoing CERCLA cleanup -- it was not prosecuted until after the conclusion of the CERCLA removal action. Therefore, section 113(h) does not withdraw jurisdiction over this prosecution. See Durfey v. E. I. DuPont De Nemours Co., 59 F.3d 121, 125 (9th Cir. 1995) (CERCLA Sec. 113 bars challenges to removal or remedial actions "until completion of cleanup activities")