**FORT ORD TOXICS PROJECT, INC.; California Public Interest Research Group; Curt Gandy; Joe Manaea, Plaintiffs–Appellants,**

v.

**CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY; Sub. Department of Toxic Substances Control; Jesse Huff, Director, Department of Toxic Substances Control, Defendants,**

and

**United States Department of the Army; United States Department of Defense, Real Parties in Interest–Appellees.**

No. 98–16160.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 15, 1999

Filed Sept. 2, 1999

---

Charles C. Cadart, David A. Nicholas, Howard J. Hirsch, National Environmental Law Center, Boston, Massachusetts; Scott J. Allen (argued), Washburn, Briscoe & McCarthy, San Francisco, California, for the plaintiffs-appellants.

Elizabeth Ann Peterson, United States Department of Justice, Washington, D.C., for the real parties in interest-appellees.

Before: WIGGINS, FERNANDEZ, and THOMAS, Circuit Judges.

WIGGINS, Circuit Judge:

Plaintiffs, two nonprofit groups and two individuals, sued California and federal government agencies in an effort to force the agencies to comply with a provision of California environmental law prior to conducting a Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") cleanup of the military installation at Fort Ord. The district court dismissed the suit, holding that CERCLA § 113(h), 42 U.S.C. § 9613(h), precludes jurisdiction.[1] We reverse.

1. Section 113(h) reads as follows:
No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or

## I.

In February 1990, Fort Ord was placed on the Environmental Protection Agency's ("EPA") National Priorities List, a list of sites that are given priority in cleanup. That summer, the Army, the EPA, the California Department of Toxic Substances Control ("DTSC"), and the California Regional Water Quality Control Board entered into an agreement setting forth the procedures for a CERCLA remedial cleanup of Fort Ord. As part of this cleanup, and with DTSC's approval, the Army placed contaminated soil in a landfill on the base. In response, plaintiffs filed this action in state court against DTSC, the California Environmental Protection Agency, and the Army. Plaintiffs' complaint alleged that DTSC violated the California Environmental Quality Act ("CEQA") in failing to prepare an environmental impact statement prior to granting the Army the authority to deviate from the requirements of California's prohibition against land disposal of hazardous wastes. *See* Cal. Pub. Res.Code §§ 21061. Plaintiffs requested a preliminary injunction against the Army's cleanup.

■ The Army removed the case to federal court. Plaintiffs moved to have the case remanded to the state court. The district court granted the motion with respect to the state defendants, but denied it with respect to the Army. The Army then moved to dismiss the lawsuit, invoking CERCLA § 113(h)'s jurisdictional bar. The district court granted the motion and dismissed the case. Plaintiffs timely appealed to this court. We review de novo the district court's dismissal for lack of subject matter jurisdiction. *See, e.g., Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.,* 20 F.3d 987, 990 (9th Cir.1994).

## II.

Plaintiffs argue that the district court erred in dismissing their lawsuit on the basis of § 113(h)'s jurisdictional provision. First, plaintiffs claim that § 113(h) postpones jurisdiction only for claims that challenge CERCLA cleanups on the basis of state law that is "applicable or relevant and appropriate" ("ARAR") to the CERCLA cleanup. There is no dispute that the basis for plaintiffs' claim, CEQA, is not ARAR. Therefore, plaintiffs argue that § 113(h) is inapplicable. Second, plaintiffs claim that § 113(h) only postpones jurisdiction for challenges to CERCLA cleanups conducted under § 104 and § 106. The Fort Ord cleanup, they argue, is a § 120 cleanup and, therefore, falls outside the purview of § 113(h). Third, plaintiffs claim that, even if § 113(h) postpones federal court jurisdiction over their lawsuit, it does not remove jurisdiction from state courts. Therefore, they claim that the district court erred in not remanding their lawsuit to the state court in which it originally was brought. We find no merit in plaintiffs' first and third arguments, and we dispose of these claims initially, before addressing plaintiffs' strongest argument.

### A. Non–ARAR claims and § 113(h)

■ Plaintiffs argue that the plain language of § 113(h) shows that their lawsuit,

to review any order issued under section 9606(a) of this title, in any action except one of the following:
(1) An action under section 9607 of this title to recover response costs or damages or for contribution.
(2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.
(3) An action for reimbursement under section 9606(b)(2) of this title.
(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.
(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.

which is based on non-ARAR state law, is not affected by the jurisdictional bar.

No federal court shall have jurisdiction under Federal law other than under section 1332 of title 28 of the United States Code (relating to diversity of citizenship jurisdiction) or under *State law which is applicable or relevant and appropriate* under section 121 (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 104, or to review any order issued under section 106(a).....

42 U.S.C. § 9613(h) (internal citations omitted) (emphasis added). Under plaintiffs' reading of § 113(h), federal courts have no jurisdiction over challenges to CERCLA cleanups when those challenges are based on state law that is ARAR. But, they argue, where the basis for the lawsuit is non-ARAR state law, § 113(h) does not apply.

Congress passed § 113(h) in order to "protect[ ] the execution of a CERCLA plan *during its pendency* from lawsuits that might interfere with the expeditious cleanup effort." *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 329 (9th Cir.1995) (hereinafter *"MESS"*). But as plaintiffs point out, § 113(h) is a limited provision; that Congress did not intend to foreclose all potential lawsuits is beyond question. *See id.* at 330. Nevertheless, we find plaintiffs' interpretation of § 113(h)'s scope to be nonsensical.

Under § 121 of CERCLA, a cleanup must comply with all "legally applicable or relevant and appropriate ... requirement[s]," including any "State environmental" requirements that are "more stringent" than the governing federal requirements. *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 671 (5th Cir.1989). This means that the federal government is obligated to ensure that CERCLA cleanups comply with state environmental law that is ARAR. Because CERCLA only requires that cleanups comply with state law that is ARAR, it clearly imposes no obligation to comply with *non-ARAR* state

law when conducting a CERCLA cleanup. *See United States v. Denver*, 100 F.3d 1509, 1513 (10th Cir.1996). This simple truth exposes the sheer vacuity of plaintiffs' argument. Under plaintiffs' reading of § 113(h), plaintiffs *cannot* postpone a CERCLA cleanup by claiming that the CERCLA cleanup is ignoring or violating *binding* legal requirements, but plaintiffs *can* postpone a CERCLA cleanup by claiming that the CERCLA cleanup is ignoring or violating *irrelevant or inapplicable* legal requirements.

We do not believe that Congress intended, nor do we believe that the statutory language mandates, such an absurd rule of law. We believe Congress chose the "applicable or relevant and appropriate" language for § 113(h) because Congress wanted to protect CERCLA cleanups from disputes regarding the applicable environmental standards. At the same time, Congress did not want § 113(h) to serve as a shield against litigation that is unrelated to disputes over environmental standards. Our decision in *MESS* is instructive in this regard. *See* 47 F.3d at 325. In *MESS* we noted that § 113(h) "amounts to a 'blunt withdrawal of jurisdiction'" from any "challenges" to a CERCLA cleanup. *Id.* at 328. But § 113(h) does not preclude all lawsuits, only those that are "directly related to the goals of the cleanup itself." *Id.* at 330. For example, a lawsuit brought to enforce minimum wage requirements would be insufficiently related to the goals of the cleanup to qualify as a "challenge" to the cleanup, and such a suit would not implicate § 113(h). *Id.*

We believe the *MESS* court's discussion of what constitutes a "challenge" to a CERCLA cleanup sheds light on the meaning of the "applicable or relevant and appropriate" language in § 113(h). This language was not intended to allow litigants to postpone important cleanups by basing their lawsuits on inapplicable or irrelevant state environmental law. Rather, this language was meant to postpone

federal jurisdiction over lawsuits that go to the heart of the cleanup itself.

### B. State court jurisdiction

■ Plaintiffs also argue that, even if § 113(h) precludes federal court jurisdiction over their lawsuit, it does not remove state court jurisdiction. Plaintiffs point out that § 113(h) reads "No *Federal* court shall have jurisdiction...." 42 U.S.C. § 9613(h) (emphasis added). Thus, under plaintiffs' reading of § 113(h), the district court could not both find that it lacked jurisdiction over their lawsuit and also deny their motion to have the case remanded to the state court.

We reject plaintiffs' argument. In passing § 113(h), Congress did not intend to preclude dilatory litigation in federal courts but allow such litigation in state courts; Congress' purpose could be thwarted just as easily by allowing state courts to issue injunctions halting CERCLA cleanups. We believe Congress only removed *federal* court jurisdiction from "challenges" to CERCLA cleanups because only federal courts shall have jurisdiction to adjudicate a "challenge" to a CERCLA cleanup in the first place. Under § 113(b), federal "district courts have exclusive original jurisdiction over all controversies arising under" CERCLA. 42 U.S.C. § 9613(b). Plaintiffs concede that their lawsuit is a "challenge" to a CERCLA cleanup, yet they claim that their lawsuit is not a "controversy arising under" CERCLA. We reject plaintiffs' cramped interpretation of § 113(b). As noted by one district court, by granting district courts exclusive jurisdiction over "all controversies arising under" CERCLA, Congress used language more expansive than would be necessary if it intended to limit exclusive jurisdiction solely to "those claims created by CERCLA." *Bolin v. Cessna Aircraft Co.,* 759 F.Supp. 692, 715 (D.Kan.1991).

■ In analyzing the interplay between §§ 113(b) and 113(h), we look to a primary tenet of statutory construction: courts are

"guided not by 'a single sentence or member of a sentence, but [must] look [ ] to the provisions of the whole law, and to its object and policy.' " *John Hancock Mutual Life Ins. Co. v. Harris Trust & Savings Bank,* 510 U.S. 86, 94–95, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). In this case, plaintiffs' attempt to limit § 113(b) more narrowly than § 113(h) is inconsistent with the broad language used in § 113(b) and would hinder the clear purpose of § 113(h). Congress enacted § 113(h) in order to promote the "swift execution" of CERCLA cleanups. *MESS,* 47 F.3d at 329. This being the case, we must read § 113(h) in accordance with the broad language of § 113(b) in order to effectuate congressional intent. We believe congressional intent is best effectuated by reading § 113(b)'s exclusive jurisdiction provision to cover any "challenge" to a CERCLA cleanup. Thus, § 113(h), by postponing the jurisdiction of federal courts, postpones jurisdiction over CERCLA challenges from the only courts that have jurisdiction to hear such challenges.

### C. The Distinction between § 104 and § 120

■ Plaintiffs' final argument, like the preceding two, would lead to a rule that is intuitively unappealing. Plaintiffs argue that § 113(h) applies only to cleanups conducted under the authority of § 104, not cleanups, like that at Fort Ord, conducted under the authority of § 120. This argument is troubling because its acceptance would allow plaintiffs to sue to enjoin many cleanups on federal property, even though plaintiffs could not sue to enjoin a similar cleanup on private property. But this argument, unlike plaintiffs' other claims, appears to be the most reasonable interpretation of the statutory language, and we reverse the district court on this basis.

CERCLA's jurisdictional bar only removes jurisdiction "to review any chal-

lenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title...." 42 U.S.C. § 9613(h). There is no dispute that the cleanup at Fort Ord was conducted pursuant to the provisions of § 120. Therefore, plaintiffs claim that § 113(h), which fails to mention actions selected under § 120, must not apply to the Fort Ord cleanup. The Army disagrees. In its view, § 120 and § 104 are not separate grants of authority; rather, § 104 is the overarching grant of authority to conduct cleanups on both private and federal property, and § 120 simply sets special standards for cleanups at federal facilities.

We have twice applied § 113(h)'s jurisdictional bar to cleanups at federal facilities. *See MESS*, 47 F.3d at 325; *Hanford Downwinders Coalition, Inc. v. Dowdle*, 71 F.3d 1469 (9th Cir.1995). But on neither occasion did we specifically address whether § 120 cleanups, by virtue of their independence from § 104 cleanups, fall outside of § 113(h)'s jurisdictional bar. Therefore, our decision here is not controlled by those earlier cases. *See, e.g., Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1363 (9th Cir. 1998) (reaffirming that this court is not bound by prior sub silentio holdings on jurisdictional issues).

In fact, no circuit court has published a decision reaching this question. But the Army's claim that § 120 cleanups do not proceed under a separate grant of authority but, rather, are conducted under the broad authority of § 104 is supported by the decisions of those district courts that have reached this issue. *See Werlein v. United States*, 746 F.Supp. 887, 891–92 (D.Minn.1990); *Heart of America Northwest v. Westinghouse Hanford Co.*, 820 F.Supp. 1265, 1278 (E.D.Wash.1993); *WorldWorks I v. U.S. Dept. of Army*, 22 F.Supp.2d 1204, 1207 (D.Colo.1998). In addition, it is seemingly supported by some legislative history. *See* P.L. 99–499 at 2877 ("This section requires the Admin-

istrator to select appropriate cost-effective remedial actions to be carried out under section 104 or secured under section 106.").

The problem is that the Army's position does not seem to be supported by the statutory text. First, § 120 does seem to create a grant of authority separate from §§ 104 and 106. "[N]o authority vested in the Administrator under this section may be transferred, by executive order of the President or otherwise, to any other officer or employee of the United States or to any other person." 42 U.S.C. § 9620(g). Other CERCLA provisions also identify § 120 as a grant of authority separate from § 104. In fact, § 117, which was passed in the same bill as §§ 113 and 120, discusses § 120 cleanups as separate from § 104 cleanups. "Before adoption of any plan for remedial action to be undertaken by the President, by a State, or by any other person, under section 9604, 9606, 9620, or 9622 of this title, the President or State, as appropriate, shall take both of the following actions...." 42 U.S.C. § 9617(a). Even other parts of § 113 seem to imply that some remedial actions are conducted pursuant to § 104 while others are conducted pursuant to § 120. *See* 42 U.S.C. § 9613(g) ("... if the President is diligently proceeding with a remedial investigation and feasibility study *under section 104(b) or section 120* [42 U.S.C.S. § 9604(b) or § 9620] (relating to Federal facilities).").

If § 120 creates a grant of authority separate from § 104, then the plain language of § 113(h) would exempt § 120 cleanups from its jurisdictional bar. Determining which provision governs a particular cleanup requires a close look at the different types of CERCLA cleanups and at the specific grants of authority in § 120. CERCLA distinguishes between two types of cleanups: removal actions and remedial actions. *See* 42 U.S.C. § 9601(23) and (24). In short, removal actions are temporary measures taken to protect against the threat of an immediate release of hazardous substances into the environment,

whereas remedial actions are intended as permanent solutions. Under § 120(e)(2), the Administrator of the EPA is granted authority to conduct remedial actions on federal property. *See* 42 U.S.C. § 9620(e)(2). There is no analogous authority under § 120 for the commencement of removal actions. Thus, removal actions on federal property must fall under the general provisions of § 104. *See* 42 U.S.C. § 9604(a).

The text of § 113(h), then, would preclude challenges to a CERCLA *removal* action on federal property, because such actions are conducted under § 104's grant of authority. But § 113(h) would not preclude challenges to a CERCLA *remedial* action, because such actions are conducted under § 120's grant of authority. Whether the legislators who voted for § 113(h) subjectively intended this distinction is unclear to us. One commentator has argued that there are powerful reasons why Congress did intend such a distinction. *See* Ingrid Brunk Wuerth, Challenges to Federal Facility Cleanups and CERCLA Section 113(h), 8 Tul. Envtl. L.J. 353, 370 (1995) (noting that "[t]he delay in reviewing challenges to remedial actions is less serious since immediate action is authorized under section 104"). It is also unclear whether the legislators who voted for § 113(h) subjectively intended to allow immediate challenges to remedial actions at federal facilities even while disallowing such challenges at private facilities. Some commentators have argued that this policy choice makes sense as well. *See id.* at 369–70. But we are not concerned with the wisdom of Congress' policy choice, and we lack the luxury to entertain the subjective intentions of various legislators. Our job is to effectuate Congressional intent as expressed in the statutory text. Thus, despite any misgivings we may have, we adopt this distinction between removal and remedial actions at federal facilities because the statutory language seems to require it.

It is undisputed that the present cleanup at Fort Ord is a remedial action conducted pursuant to § 120. As a result, § 113(h) is inapplicable.

We reverse.