**GENERAL ELECTRIC COMPANY,**
**Plaintiff,**

v.

**Christine Todd WHITMAN, Administrator, United States Environmental Protection Agency, and United States Environmental Protection Agency, Defendants.**

**No. CIV.A.00–2855(JDB).**

United States District Court,
District of Columbia.

March 31, 2003.

Carter G. Phillips, Sidley Austin Brown & Wood, Washington, DC, for Plaintiff.

Wendy Lynn Blake, U.S. Department of Justice, Environmental Defense Section, Washington, DC, for Defendants.

Lisa Emily Heinzerling, Michael Ward Steinberg, Morgan, Lewis & Bockius, L.L.P., Washington, DC, for Movants.

Raymond B. Ludwiszewski, Gibson, Dunn & Crutcher, L.L.P., Robert J. Kafin, Proskauer Rose, LLP, Washington, DC, for Amicus.

## MEMORANDUM OPINION

BATES, District Judge.

Plaintiff General Electric Company ("GE") and defendants the United States Environmental Protection Agency and its administrator, Christine Todd Whitman (collectively "EPA"), are before the Court on EPA's motion to dismiss or for summary judgment. GE raises a broad consti-tutional challenge to section 106 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERC-LA" or "the Act"), 42 U.S.C. § 9601 *et seq.*, and seeks a declaratory judgment that section 106, 42 U.S.C. § 9606, in tan-dem with sections 107(c)(3) and 113(h), 42 U.S.C. §§ 9607(c)(3), 9613(h), creates a re-gime that violates the Due Process Clause of the Fifth Amendment. Amended Com-plaint at ¶ 1.

EPA urges dismissal of GE's action on the ground that section 113(h) postpones judicial review of any challenges to EPA action under CERCLA—including consti-tutional challenges to the statute itself—until EPA seeks to enforce its remedial actions in court. Even if there is jurisdic-tion to review GE's challenge at this time, EPA contends that these sections of CERCLA do not violate GE's due process rights. EPA also argues that GE's chal-lenge constitutes a facial attack on CERC-LA that cannot prevail because there are circumstances in which the challenged pro-visions plainly could be applied in a consti-tutional manner.

GE counters that it is not seeking pre-enforcement review of any specific EPA order, which it concedes would be barred until EPA seeks enforcement in court, nor is it pursuing a purely facial challenge to CERCLA. Rather, GE asserts that it is challenging the constitutionality of CERC-LA's statutory scheme as "interpreted and applied" generally by EPA. As a result, GE contends that the jurisdictional bar under section 113(h) does not apply here.

As to the merits, GE argues that CERCLA's provisions violate due process by failing to provide a hearing and other procedural safeguards before EPA issues an administrative order requiring remedia-tion of a hazardous waste site. GE notes that if one refuses to comply with an ad-

ministrative order, one risks considerable penalties, including punitive damages; alternatively, EPA may complete the remediation itself, and then seek recovery of its costs, plus treble damages, from the non-complying party. And even if one complies with a cleanup order, one can only seek reimbursement of expenses from EPA in court once EPA determines the site is completely remediated, which is often several years later. Thus, GE contends, there is no assurance that there will be a prompt post-order hearing in court. Moreover, GE maintains that EPA issues such orders, without hearings or other procedural safeguards, even when there is no emergency warranting immediate remediation. GE contends that CERCLA thus amounts to a coercive regime that creates a "Hobson's choice" for parties faced with section 106 orders under CERCLA: comply with EPA's order without receiving a hearing on EPA's proposed remedy, or refuse and risk stiff and mounting penalties.

Upon consideration of the pleadings, the briefing (including briefs by *amicus curiae*),[1] oral argument, and the entire record herein, the Court finds that, in light of section 113(h), it does not have subject matter jurisdiction over GE's broad, pre-enforcement constitutional challenge to CERCLA. Because this Court concludes that section 113(h) bars judicial review at this time, the Court does not address the merits of GE's due process claim. Therefore, the Court grants EPA's motion to dismiss.

### BACKGROUND

### I. The CERCLA Framework

■ Congress designed CERCLA "in response to the serious environmental and health risks posed by industrial pollution." *United States v. Bestfoods*, 524 U.S. 51, 55, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). As its name implies, CERCLA is "a comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." *Key Tronic Corp. v. United States*, 511 U.S. 809, 814, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). Also known as the Superfund law, CERCLA provides the President (typically through the Administrator of EPA) with extensive authority to enforce the cleanup provisions of the Act. CERCLA requires that sites contaminated by toxic wastes be abated and cleaned up expeditiously by, or at the expense of, "those responsible for the hazardous condition." *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 936 (8th Cir. 1995). "These actions typically require private parties to incur substantial costs in removing hazardous wastes and responding to hazardous conditions." *Key Tronic*, 511 U.S. at 814, 114 S.Ct. 1960. Those subject to liability for cleanup orders under CERCLA are referred to as "potentially responsible parties," or PRPs. *See* 42 U.S.C. § 9607(a). In order to be effective, CERCLA authorizes EPA to address contaminated sites without first having to undergo judicial review of issues relating to liability or the adequacy of the cleanup remedy. *See Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1019 (3rd Cir.1991); 42 U.S.C. § 9613(h).

■ The Act "allow[s] the EPA to undertake direct removal or remedial action to protect the public health or welfare or the environment when it determines that

---

1. *Amicus* briefs were filed with the Court by the Natural Resources Defense Council, Inc., Hudson River Sloop Clearwater, New York Rivers United, Riverkeeper and Scenic Hudson, the Chamber of Commerce of the United States, Washington County CEASE, Inc., and the American Chemistry Council.

release of a hazardous substance poses an imminent and substantial danger." *Barmet Aluminum Corp. v. Reilly*, 927 F.2d 289, 290–91 (6th Cir.1991). CERCLA contemplates two distinct kinds of clean-up actions arising under its statutory framework: removal actions and remedial actions. *See* 42 U.S.C. §§ 9601(23)-(24). Removal actions, which occur before remedial action is undertaken, are short-term actions taken to halt any immediate risks posed by hazardous wastes, and often involve actions to study, monitor, evaluate, clean up and otherwise "prevent, minimize, or mitigate damage to the public health or welfare or the environment." *Id.* § 9601(23). Remedial actions are more permanent remedies and measures taken to clean up contamination, actions "taken instead of or in addition to removal actions." *Id.* § 9601(24). Remedial actions include investigation, testing, storage, abatement, confinement, repair, excavation, dredging, relocation, incineration, "and any monitoring reasonably required to . . . protect the public health and welfare and the environment." *Id.*

■ Hazardous waste sites that pose the greatest danger to public health and the environment are listed on the National Priorities List (NPL). *See Ohio v. EPA*, 838 F.2d 1325, 1327 (D.C.Cir.1988). Sites listed on the NPL "are considered the leading candidates for cleanup financed by the Superfund program." *Washington State Dep't of Transp. v. EPA*, 917 F.2d 1309, 1311 (D.C.Cir.1990); *see also* 42 U.S.C. § 9605(a)(8)(B). EPA has listed at least three sites on the NPL with respect to which EPA considers GE to be a PRP or otherwise liable under CERCLA. *See* 40 C.F.R. Pt. 300, App. B. Before EPA can propose remedies for site cleanup and abatement, information is obtained, data gathered, remediation investigated, and alternative options considered. *See* 40

C.F.R. §§ 300.430, 300.5. Moreover, before EPA selects a remedy, the public, the community, neighbors, interested parties, and all PRPs have several opportunities to comment (in writing and at hearings) on the proposed remedy. *Id.* at § 300.430(f).

■ Section 122 of CERCLA authorizes EPA to initiate negotiations with PRPs to "allow [for the] expedient and efficient settlements of potential liability." *Dravo Corp. v. Zuber*, 13 F.3d 1222, 1227 (8th Cir.1994); 42 U.S.C. § 9622. If negotiations fail, one option under CERCLA for cleaning a hazardous waste site is for EPA to perform the remediation itself, using money taken out of the Superfund established by Congress. EPA would then bring an action in federal district court under section 107 of CERCLA to recover its costs from parties responsible for the contamination. *See* 42 U.S.C. §§ 9607(a)(4)(A), 9611(a). Given the limited funds available in the Superfund in relation to the enormity of the hazardous waste problem nationwide, cost recovery actions under section 107 are critical for replenishing the Superfund. *See Solid State Circuits, Inc. v. EPA*, 812 F.2d 383, 388 (8th Cir.1987).

On the other hand, section 106 allows EPA to order parties to clean a site contaminated with hazardous waste, and to file a civil action in federal district court to compel a party to comply with EPA's proposed remedy. 42 U.S.C. § 9606(a). The section 106 administrative orders lie at the heart of GE's due process challenge in this case. *See* Am. Compl. ¶ 2. Before issuing a section 106 order, however, EPA must determine "that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility." 42 U.S.C. § 9606(a). Given the imminent nature of the potential danger to the public

welfare and the environment, CERCLA does not require EPA to provide a hearing prior to issuing a section 106 order. Under the penalty provision of section 106(b), any person who, "without sufficient cause," willfully violates a section 106 order, or fails or refuses to comply with such an order, may be fined up to $27,500 for each day the violation or non-compliance continues—a very strong incentive to encourage quick compliance. *Id.* § 9606(b). In addition, under section 107, a party who fails to comply with a section 106 order also faces the possibility of punitive damages up to three times "the amount of any costs incurred by the [Superfund] as a result of such failure to take proper action." *Id.* § 9607(c)(3).

But these fines and damages are not automatic; EPA must bring a civil action in district court to compel compliance with its order. Even then, the district court has discretion as to whether noncompliance warrants a fine, penalties, or punitive damages, and if so, how much. *Id.* The non-complying party has the opportunity at this stage to raise all challenges to a section 106 order, including challenges to the appropriateness of EPA's selected remedy for abatement of the site, claims that a party is not liable for the site or waste, assertions that EPA failed to follow applicable guidelines or regulations, or any other defenses to liability that may be available. This judicial hearing occurs before any recovery costs, fines or penalties are imposed on a party. *See Barmet Aluminum,* 927 F.2d at 294–96; *Solid State Circuits,* 812 F.2d at 389–92. Under the statute, if the district court determines that a party had "sufficient cause" for not complying with the order, no penalties or fines can be imposed. *See* 42 U.S.C. §§ 9606(b), 9607(c)(3).

The scope, nature and limits of judicial review of EPA action under CERCLA are set out in section 113. *See id.* § 9613. The relevant provision here is section 113(h), entitled "Timing of review," which limits—or more precisely postpones—when a challenge may be brought in federal district court to removal or remedial actions or section 106 orders issued by EPA. *Id.* § 9613(h). There is, pursuant to section 113(h), no jurisdiction in federal court for such challenges except in five enumerated circumstances: 1) when EPA brings a cost recovery action under section 107; 2) when EPA brings an action to enforce a section 106(a) order or to recover penalties for violations of orders; 3) when a party brings an action seeking reimbursement from EPA under section 106(b)(2); 4) in a citizen suit brought under 42 U.S.C. § 9659; or 5) when EPA brings an action under section 106 seeking to compel a remedial action. The thrust of section 113(h) is that one cannot obtain pre-enforcement review of EPA orders (including section 106 orders) or EPA response actions with respect to a contaminated site.

## II. GE's Amended Complaint

GE contends that sections 106, 107(c)(3), and 113(h) of CERCLA work together to create a coercive regime that denies it and other PRPs their due process right to an impartial hearing prior to the issuance of a section 106 order. GE maintains that one subject to a section 106 order "does not receive any prior hearing before the order becomes effective." Am. Compl. ¶ 2. EPA's use of these administrative orders coupled with the threat of substantial fines and penalties, GE claims, is "coercive" and "deprive[s] persons of their ability to challenge the propriety" of such orders in a timely fashion, thereby leaving "no practical choice but to comply." *Id.* Because CERCLA allows EPA such broad latitude, GE argues that EPA controls and manipulates the timing of any post-enforcement

review, preventing prompt review of EPA's orders and resulting in delay that undermines any meaningful opportunity for review, which in turn allows statutory fines and penalties for non-compliance to amass rapidly. *Id.* ¶ 3.

> The [section 106] regime thus imposes a classic and unconstitutional Hobson's choice: Either do nothing and risk severe punishment without meaningful recourse or comply and wait indefinitely before having any opportunity to be heard on the legality and rationality of the underlying order.

*Id.* ¶ 4.

Under section 107, EPA may implement its own remedy and then seek recovery of the costs of the remediation from PRPs in federal court. Similarly, under section 106(a), EPA may seek an injunction in federal court requiring a person to implement the agency's proposed remedial plan. GE concedes that, in both these situations, "the PRPs receive a timely hearing in court without being forced to do the work first and without being subject to fines and penalties." *Id.* ¶ 15. However, GE contends that under section 106(a) EPA may also issue an administrative order requiring a cleanup "without a hearing upon a finding that 'there is imminent or substantial endangerment to the public health or environment because of an actual or threatened release of a hazardous substance from a facility.'" *Id.* ¶ 16 (quoting 42 U.S.C. § 9606(a)). "It is the use of this unilateral order authority [pursuant to section 106] in concededly non-emergency, non-time-sensitive situations, which is the subject of this complaint." Am. Compl. ¶ 16.[2]

GE's amended complaint discusses three hazardous waste sites as to which EPA contends that GE is, or may be, responsible for disposal of hazardous waste: 1) a factory building in Hoboken, New Jersey, where GE made mercury vapor lamps in the 1920s and other lighting products until the factory was sold in 1948; 2) two manufacturing facilities in Hudson Falls and Fort Edward, New York, where GE discharged PCBs into the Upper Hudson River well into the 1970s; and 3) Fletcher Paint Works in Milford, New Hampshire, a now-bankrupt company to whom GE sold Pyranol (an oil containing PCBs) from 1956 to 1968 for use in the manufacture of paint. *See* Am. Compl. ¶¶ 31–47. GE's amended complaint details these waste sites and GE's role, or lack of role, in the contamination of the sites. These sites have all been listed on the NPL. *See* 40 C.F.R. Pt. 300, App. B. EPA acknowledges that these sites "are either at or near the stage where remedial action will be selected and implemented." Defs. Motion to Dismiss at 6.

Indeed, EPA has already issued section 106 orders to GE for removal or remediation action at these waste sites. On February 24, 1997, EPA ordered GE to maintain security for the Hoboken site, provide temporary evacuation and housing for the former residents, and provide complete maintenance for the building. Am. Compl. ¶ 33. On April 1, 1998, EPA ordered GE to demolish the factory. *Id.* ¶ 34. At the Hudson River facilities, EPA has listed 40 miles of the Hudson River on the National Priorities List as a Superfund site due to the PCBs discharged into the river. *Id.* ¶ 38. GE's amended complaint states that "the EPA recently announced that it is

---

**2.** Section 106(a) authorizes the issuance by EPA of "such orders as may be necessary to protect public health and welfare and the environment." 42 U.S.C. § 9606(a); *see* Exec. Order No. 12580, 52 Fed.Reg. 2923 (Jan. 23, 1987) (delegating President's authority to EPA).

**16**

now considering dredging projects" to remove the PCBs in the river, a project GE contends will take a decade and cost hundreds of millions of dollars to complete. *Id.* ¶ 41. GE believes "EPA will choose not to implement these projects itself because of the enormous cost and technological challenges that would be involved." *Id.* ¶ 42. "Instead," GE warns, "EPA will invoke CERCLA's unilateral orders regime and require GE to implement a massive dredging remedy." *Id.*

GE thus contends, as illustrated by these examples, that the CERCLA regime is unconstitutional because it permits administrative orders "without prior hearing in cases that do not present urgent circumstances requiring immediate action," and does not allow for a meaningful, prompt judicial hearing once an order is issued. *Id.* ¶ 54. Therefore, GE seeks a declaratory judgment that the use of section 106 orders, in conjunction with sections 107(c)(3) and 113(h), "is unconstitutional as violative of due process." *Id.*

### ANALYSIS

GE asserts federal question jurisdiction under 28 U.S.C. § 1331 as the basis for subject matter jurisdiction over its constitutional challenge to CERCLA. EPA counters that pre-enforcement challenges to EPA response actions, even if framed in constitutional terms, are precluded under section 113(h) of CERCLA.

■■■ "Because federal courts are courts of limited jurisdiction, a plaintiff may invoke the jurisdiction of a federal court only pursuant to a statutory grant of authority to adjudicate the asserted claim. Moreover, when the plaintiff seeks to sue the United States or an instrumentality thereof, he may not rely on the general federal question jurisdiction of 28 U.S.C. § 1331, but must identify a specific statutory provision that waives the govern-

ment's sovereign immunity from suit." *Clinton County Comm'rs v. EPA,* 116 F.3d 1018, 1021 (3rd Cir.1997) (en banc) (citations omitted) (finding no subject matter jurisdiction under 28 U.S.C. § 1331 to raise pre-enforcement challenge to section 106 order); *see Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). It is well settled that such waivers of immunity must be "unequivocally expressed," *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (quoting *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980)), and are to be "construed strictly in favor of the sovereign," *id.* (quoting *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951)).

■■■ Congress amended CERCLA in 1986 through the Superfund Amendments Reauthorization Act ("SARA"), adding the timing of review provision in section 113(h) that delays judicial review of any challenges to removal or remedial actions or EPA orders under section 106 until EPA seeks to enforce its orders. Given this clear limitation on pre-enforcement judicial review, this Court must determine whether GE's constitutional attack on CERCLA is the type of pre-enforcement challenge that Congress intended to preclude:

In cases involving delayed judicial review of final agency actions, we shall find that Congress has allocated initial review to an administrative body where such intent is "fairly discernable in the statutory scheme." Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, and whether the

claims can be afforded meaningful review.

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994) (citations omitted); *see also Block v. Community Nutrition Institute*, 467 U.S. 340, 351, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) (presumption of judicial review of agency actions is overcome "whenever the congressional intent to preclude review is fairly discernable in the statutory scheme"). Based on the language, structure, purpose, and legislative history of section 113(h), and extensive federal case law applying it, the Court concludes that Congress intended to preclude judicial review of GE's broad, pre-enforcement constitutional challenge to CERCLA's administrative order regime.

## I. *Thunder Basin Coal Co. v. Reich*

The jurisdictional analysis of GE's constitutional challenge to CERCLA is informed by the Supreme Court's analysis in *Thunder Basin Coal Co. v. Reich*. There, plaintiffs brought a due process challenge to the Federal Mine Safety and Health Amendments Act, 30 U.S.C. § 801 *et seq.* ("Mine Act"). That Act requires unannounced safety inspections of the nation's mines, and requires that a representative of the miners be given an opportunity to participate in such inspections. 30 U.S.C. § 813(f). Similar to CERCLA, the Mine Act gives the Secretary of Labor broad authority to compel immediate compliance with agency orders issued under the Act through the use of civil penalties and sanctions. Challenges to enforcement under the Mine Act are reviewed by the Mine Safety and Health Review Commission ("Commission"), and then by the appropriate court of appeals. *Id.* § 816(a)(1). When mine workers sought to designate two union officials as their representatives for safety inspections, the mine owner brought suit in federal district court seeking pre-enforcement injunctive relief. Raising the same "Hobson's choice" due process argument that GE asserts here, the mine owner contended that

> requiring [mine operators] to challenge MSHA's interpretation of 30 U.S.C. § 813(f) and 30 CFR pt. 40 through the statutory-review process would violate the Due Process Clause of the Fifth Amendment, since the company would be forced to choose between violating the Act and incurring possible escalating daily penalties, or, on the other hand, complying with the designations and suffering irreparable harm.

*Thunder Basin*, 510 U.S. at 205, 114 S.Ct. 771.

The Supreme Court found that this constitutional challenge was precisely "the type Congress intended to be reviewed within the statutory structure." *Id.* at 212, 114 S.Ct. 771. The Court thus held that the Act precluded district court jurisdiction over the owner's pre-enforcement claims, including its constitutional challenge, because such claims must go to the Commission first, and then to the court of appeals for judicial review:

> As for petitioner's constitutional claim, we agree that "[a]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies." This rule is not mandatory, however . . . . The Commission has addressed constitutional questions in previous enforcement proceedings. Even if this were not the case, however, petitioner's statutory and constitutional claims here can be meaningfully addressed in the Court of Appeals.

*Id.* at 215, 114 S.Ct. 771 (quoting *Johnson v. Robison*, 415 U.S. 361, 368, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974)). The Court concluded that "the Mine Act's comprehen-

sive enforcement structure, combined with the legislative history's clear concern with channeling and streamlining the enforcement process, establishes a 'fairly discernable' intent to preclude district court review in the present case." *Id.* at 216, 114 S.Ct. 771. The Court therefore rejected the mine owner's attempt to circumvent the Mine Act's review provisions by preemptively challenging the constitutionality of the Act. *Id.*

This case falls well within the rationale of *Thunder Basin.* The Mine Act and CERCLA have similar comprehensive statutory schemes. The former contains a number of incentives "to compel immediate compliance with the Mine Act provisions through the use of mandatory civil penalties, discretionary civil penalties, and other sanctions." *Id.* at 204, 114 S.Ct. 771. Indeed, a mine operator who fails to comply with a citation can be assessed $5,000 per day pending compliance. *Id.* at 204 n. 4, 114 S.Ct. 771 (citing 30 U.S.C. §§ 814(a), 815(a)). Likewise, CERCLA contains provisions which allow EPA to compel compliance with its orders through civil penalties up to $27,500 per day of non-compliance. *See* 42 U.S.C. § 9604(e)(5)(b)(ii); *see also Bedford Affiliates v. Sills,* 156 F.3d 416, 427 (2nd Cir.1998) (CERCLA "was put in place to aid the expeditious resolution of environmental claims. To accomplish this objective Congress employed incentives for potentially responsible parties to settle and strong disincentives for non-settling potentially responsible parties.").

Each act streamlined respective health and safety requirements. *Thunder Basin,* 510 U.S. at 211, 114 S.Ct. 771 ("The 1977 Mine Act thus strengthened and streamlined health and safety enforcement requirements."); · *E.I. Du Pont De Nemours & Co. v. Starzyk,* 1990 WL 205823, * 1 (N.D.Ill. Nov. 26, 1990) ("CERCLA was passed in 1980 to streamline and strength-

en the government's role in cleaning up hazardous waste sites."). Originally, however, both statutes were deemed inadequate to compel compliance, and therefore Congress amended each in an effort to limit initial judicial review and strengthen incentives for compliance. *Compare Thunder Basin,* 510 U.S. at 210 n. 14, 114 S.Ct. 771 ("Under existing legislation, civil penalties were not always mandatory and were too low to compel compliance, and enforcement was hobbled by a cumbersome review process.") *with United States v. Colorado,* 990 F.2d 1565, 1570 n. 6 (10th Cir.1993) ("Congress amended CERCLA in 1986 by enacting SARA after realizing that CERCLA was 'inadequate' to address the environmental threat presented by abandoned hazardous waste sites." (citations omitted)).

Expedition and speed are thus critical goals for protecting each statute's respective constituency—miners under the Mine Act, and the public and the environment under CERCLA. *See Thunder Basin,* 510 U.S. at 211, 114 S.Ct. 771 ("Concluding that 'rapid abatement of violations is essential for protection of miners,' Congress accordingly made improved penalties and enforcement measures a primary goal of the [Mine] Act."); *Pritikin v. Dep't of Energy,* 254 F.3d 791, 794–95 (9th Cir. 2001) ("CERCLA was enacted to protect and preserve public health and the environment by facilitating the expeditious and efficient cleanup of hazardous waste sites."). Moreover, both statutes allow for judicial review in federal courts, where review of agency action is governed by similar standards. *See* 30 U.S.C. § 815(a)(1)-(2) (review in courts of appeals where agency action will be upheld if "substantially supported" by the record); 42 U.S.C. § 9613(h)-(j) (review in district court where agency action will be upheld if not arbitrary and capricious). And like CERCLA, the Mine Act has been con-

strued as "preclud[ing] district court jurisdiction over [ ] pre-enforcement challenge[s]." *Thunder Basin*, 510 U.S. at 207, 114 S.Ct. 771; *see Southern Pines Associates v. United States*, 912 F.2d 713, 716 (4th Cir.1990) ("In 1986 Congress added a provision to CERCLA which specifically precludes federal jurisdiction over pre-enforcement remedial action.").

Furthermore, GE and the mine owner in *Thunder Basin* assert essentially the same due process challenge to a statutory structure that precludes pre-enforcement challenges to agency orders, yet subjects affected parties to potentially stiff fines for non-compliance with such orders; indeed, each complains of the specter of a coercive, intolerable "Hobson's choice" regarding the dilemma of either complying with an unreviewable agency order or risking stiff penalties. *Compare Thunder Basin*, 510 U.S. at 218, 114 S.Ct. 771, *with* Am. Compl. ¶ 4. To determine whether section 113(h) of CERCLA precludes initial review of GE's constitutional challenge, then, the Court is guided by *Thunder Basin* to the statute's language, structure, purpose, and legislative history, and to whether GE's claims can be afforded meaningful review at a later point.

## II. Section 113(h)

The "Timing of review" provision in section 113(h) states as follows:

No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards)

to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following [listed five exceptions].

42 U.S.C. § 9613(h).[3] "The CERCLA statutory scheme, as amended by SARA, merely serves to effectuate a delay in a plaintiff's ability to have a full hearing on the issue of liability." *Barmet Aluminum*, 927 F.2d at 295; *see ARCO Environmental Remediation, LLC v. Dep't of Health and Quality of Montana*, 213 F.3d 1108, 1115 (9th Cir.2000).

GE claims that it is not challenging any specific order or removal action, but rather is making a broad (indeed, somewhat abstract) challenge to the CERCLA statutory scheme that somehow falls outside section 113(h):

Although GE is not here challenging any specific order issued pursuant to the unilateral orders provisions, GE is and will continue to be deprived of its liberty and property by reason of being forced to comply with these provisions. Accordingly, GE seeks a declaration by this Court sustaining GE's basic rights guaranteed by the Constitution.

Am. Compl. ¶ 7. GE admits that it "has been a victim of and is threatened with this unilateral orders regime." *Id.* ¶ 30. But although GE details at length three hazardous waste sites (each on EPA's National Priorities List) where EPA has deemed GE to be potentially responsible or liable for cleanup costs, *see id.* ¶¶ 30–47, it insists that it only refers to them as "examples illustrat[ing] these unconstitu-

---

**3.** Under section 113(b) of CERCLA, "the United States district courts shall have exclusive original jurisdiction over all controversies arising under" CERCLA, except as limited by sections 113(a) and 113(h). The five enumer- ated exceptions to the jurisdictional bar are enforcement or cost-recovery actions filed by EPA or by a private citizen. There is no contention that any of the five exceptions apply here.

tional deprivations, both existing and threatened." *Id.* at 30.

Notwithstanding GE's ardent claim that it is not challenging specific EPA orders, it is apparent that GE's challenge to CERCLA nonetheless falls within the section 113(h) prohibition of "any challenges," "in any action," to EPA removal or remedial action or to "any" section 106(a) order.[4] The language of section 113(h) reflects the broad intent of Congress strictly to limit judicial review of EPA enforcement actions or orders. Congress employed the broad term "any" three times in section 113(h), thereby casting the prohibition on pre-enforcement judicial review in sweeping terms.

"Section 113(h) is clear and unequivocal. It amounts to a 'blunt withdrawal of federal jurisdiction.'" *McClellan Ecological Seepage Situation (MESS) v. Perry,* 47 F.3d 325, 328 (9th Cir.1995) (quoting *North Shore Gas Co. v. EPA,* 930 F.2d 1239, 1244 (7th Cir.1991)); *Oil, Chemical and Atomic Workers, Int'l Union v. Richardson,* 214 F.3d 1379, 1382 (D.C.Cir.2000) (same). As the Ninth Circuit explained, "the unqualified language of the section precludes 'any challenges' to CERCLA Section 104 clean-ups, not just those brought under other provisions of CERCLA." *MESS,* 47 F.3d at 328. Section 113(h) "explicitly states that federal courts shall not have jurisdiction to review 'any challenge' except for those enumerat-

ed." *South Macomb Disposal Auth. v. EPA,* 681 F.Supp. 1244, 1249–50 (E.D.Mich.1988). "It simply cannot be denied that Congress intended to preclude all litigation which would delay, or worse, halt governmental efforts to clean up hazardous waste sites." *Oil, Chemical & Atomic Workers Int'l Union v. Pena,* 62 F.Supp.2d 1, 5 (D.D.C.1999), *aff'd,* 214 F.3d 1379 (D.C.Cir.2000); *see also Clinton County Comm'rs,* 116 F.3d at 1024 n. 1 (noting Congress's "commitment to preventing *all* judicial interference with remedial actions" under CERCLA (emphasis in original)).

When Congress has purposefully employed the term "any" in other statutes, the Supreme Court has recognized the comprehensive scope that the word suggests. In construing the language "any property" in a drug forfeiture statute, the Court stated:

> Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied, or broader words to define the scope of what was to be forfeited.

*United States v. Monsanto,* 491 U.S. 600, 607, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989). "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales,* 520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997)

---

4. In its opposition brief, GE goes to great lengths to recast its challenge as one to EPA's interpretation and application of CERCLA, *see, e.g.,* Pl. Opp. to Def. Mot. to Dismiss at 17, 53, in an obvious effort to avoid both section 113(h)'s jurisdictional bar to challenges to specific orders and fundamental problems with the merits of a facial challenge to the constitutionality of CERCLA. GE's hybrid attack on a broad category of EPA orders is to no avail, however, as the Court concludes that both as-applied and facial challenges to the CERCLA administrative orders regime are covered by the section 113(h) jurisdictional limitation under the circumstances present here, and hence GE's novel articulation is as well. *See, e.g., GDF Realty v. Norton,* 169 F.Supp.2d 648, 656 (W.D.Tex.2001) ("A plaintiff can either challenge *all* applications of a statute (i.e., a facial challenge), or the statute as-applied to the plaintiff's particular conduct—but he cannot take the middle ground and challenge the statute as-applied to a general class of activity into which his conduct also falls." (emphasis in original)).

(quoting *Webster's Third Int'l Dictionary*); *see also United States v. James*, 478 U.S. 597, 605, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986) ("Congress' choice of the language '*any* damage' and 'liability of *any* kind' further undercuts a narrow construction" (emphasis in original)); *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) ("by the repeated use of the word 'any' " in the statute, the term is "obviously meant to be inclusive").[5]

The sweeping nature of Congress's choice of the terms *"any challenges "* and "in *any* action" supports the conclusion that section 113(h) precludes pre-enforcement due process challenges to CERCLA, and specifically to the procedures available to EPA to compel compliance with its orders. Congress "could not have chosen stronger words to express its intent ... or broader words to define the scope," *Monsanto*, 491 U.S. at 607, 109 S.Ct. 2657, of the challenges to remedial or removal action or section 106 orders precluded under CERCLA's judicial review provision. Indeed, in *McNary v. Haitian Refugee Center*, 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991), the Supreme Court reasoned that if Congress had wanted to prohibit review of constitutional due process and procedural challenges under the Immigration and Nationalization Act's judicial review provision, rather than merely barring review of individual deportation orders, Congress could have used just such "expansive language"—for example, by explicitly barring review of "all causes" arising under the statute. *See* 498 U.S. at 494, 111 S.Ct. 888. That is precisely the type of all-encompassing language Congress has in fact employed in CERCLA's timing of review provision.

This reading of section 113(h) is supported by the legislative history. The Chairman of the Senate Judiciary Committee, which drafted section 113(h), explained:

> The timing of review section is intended to be comprehensive. It covers all lawsuits, under any authority, concerning the actions that are performed by EPA. The section covers all issues that could be construed as a challenge to the response, and limits those challenges to the opportunities specifically set forth in the section.

132 Cong.Rec. S14929 (daily ed. Oct. 3, 1986). Such an intent to prohibit review of "all lawsuits" under "any authority," and to cover "all issues," supports the conclusion that section 113(h) bars GE's challenge to CERCLA.

Nor can GE circumvent section 113(h) by framing its claim as a constitutional challenge rather than a statutory challenge. The Eleventh Circuit recently rejected the idea that there is somehow a difference under section 113(h) between a constitutional and a statutory claim:

> The language of section 113(h) does not distinguish between constitutional and statutory challenges; instead, it delays judicial review of "any" challenges to

---

**5.** Courts of appeals have also broadly construed the statutory term "any" to mean "all." *See, e.g., Flue–Cured Tobacco Cooperative Stabilization Corp. v. EPA*, 313 F.3d 852, 859 (4th Cir.2002) ("[T]here is no sufficient reason to give the word 'any' a meaning other than its ordinary English usage. That meaning is: 'to any extent; in any degree; at all.' This meaning has been adopted by the courts.") (quoting *Webster's Third New Int'l Dictionary*); *Southern Co. v. FCC*, 293 F.3d 1338, 1349 (11th Cir.2002) (plain meaning of "any" is "all"); *In re Jove Engineering, Inc. v. IRS*, 92 F.3d 1539, 1554 (11th Cir.1996) (statute "uses the broad term 'any' which encompasses all forms of orders" and "encompasses *any* type of order, whether injunctive, compensative, or punitive") (emphasis in original).

unfinished remedial action.... Because 'Congress did not add any language limiting the breadth of that word,' ... "any" means "all." The use of the word "any" compels us to conclude that Congress meant to bar jurisdiction over constitutional challenges as well as statutory claims challenging the adequacy of a remedial plan.

*Broward Gardens Tenants Assoc. v. EPA,* 311 F.3d 1066, 1075 (11th Cir.2002) (citation omitted); *see also Clinton County Comm'rs,* 116 F.3d at 1026 (finding that "the plain language of § 9613(h) precluded the exercise of jurisdiction over a challenge to an ongoing CERCLA removal or remedial action under *any* federal law" (emphasis in original)); *South Macomb,* 681 F.Supp. at 1249–50 ("Reading the language of § 9613(h) for its everyday meaning supports the notion that this subsection prohibits constitutional as well as statutory challenges until the time prescribed by the statute.").

Constitutional challenges to CERCLA brought pursuant to 28 U.S.C. § 1331 are not one of the five enumerated exceptions in section 113(h). In fact, other courts have ruled that pre-enforcement due process challenges are precluded. "Most courts have flatly concluded that because section 9613(h) bars pre-enforcement judicial review of 'any challenges to removal or remedial actions selected,' it also bars pre-enforcement judicial review of constitutional challenges to CERCLA itself." *Farmers Against Irresponsible Remediation (FAIR) v. EPA,* 165 F.Supp.2d 253, 262 (N.D.N.Y.2001) (section 113(h) bars pre-enforcement First Amendment challenge).

For example, in *Barmet Aluminum,* the plaintiff sought injunctive relief to prevent EPA from listing its site on a National Priority List and asserted that "because its challenge to CERCLA is constitutional, the general proscription against pre-enforcement review is inapplicable." 927 F.2d at 290. Just as GE argues here, the plaintiff asserted "that this statutory prohibition applies only to 'administrative decisions' and not 'constitutional challenge[s] to the entire CERCLA statutory scheme.'" *Id.* at 292. The Sixth Circuit rejected that construction of section 113(h):

> EPA argues that Congress passed 9613(h) to foreclose interpretations allowing pre-enforcement review of constitutional challenges. We agree.... Notably, the statutory language of section 9613(h) does not include any explicit provision for constitutional challenges.

*Id.* at 292–93; *see also Broward Gardens,* 311 F.3d at 1068 ("On appeal, plaintiffs do not assert that their claims fit within any of the [five] statutory exceptions to section 113(h), but instead contend that section 113(h) does not apply to begin with, because ... section 113(h) does not apply to constitutional claims. We disagree."); *Aztec Minerals Corp. v. EPA,* 1999 WL 969270, at * 3 (10th Cir.1999) (due process challenge barred because constitutional claim not within exceptions identified in section 113(h)); *South Macomb,* 681 F.Supp. at 1251 ("Congress intended that federal courts not have subject-matter jurisdiction to hear constitutional challenges to CERCLA at this stage of the proceedings under the Act.").[6]

## III. Structure and Purpose of Section 113(h)

Of course, GE does not explicitly seek to overturn or enjoin EPA action or an EPA

---

**6.** The fact that section 113(h) explicitly permits jurisdiction under 28 U.S.C. § 1332, but makes no mention of jurisdiction under 28 U.S.C. § 1331, suggests an intentional omission by Congress so as to preclude pre-enforcement actions based on federal question jurisdiction.

order, but instead simply seeks a declaratory judgment that sections 106, 107(c)(3) and 113(h) are unconstitutional. If it prevails, however, then naturally it would assert that ruling as a shield to invalidate or prevent section 106(a) orders by EPA. There is no doubt, then, that GE is, in effect, attempting to invalidate EPA orders that have been or may be issued to it. The vehicle for invalidating or preventing the enforcement of such orders is not determinative—rather, it is the end result sought that is critical, and here GE plainly seeks to invalidate or prevent enforcement of EPA section 106(a) orders.[7] GE's due process challenge, if successful, would have the effect of hindering (or outright preventing) EPA from enforcing orders and response actions and thereby from ensuring the complete remediation of the three sites detailed in the amended complaint (and arguably countless others as well). That result would be contrary to Congress's intent in crafting section 113(h), as it is "fairly discernable" from the structure and purpose of the statute that Congress intended a broad, pre-enforcement constitutional challenge like GE's to be precluded.

The primary goal of section 113(h) is to prevent delays caused by legal challenges that could slow or interrupt the cleanup of hazardous waste sites. *See Barmet Aluminum*, 927 F.2d at 291 (CERCLA's "primary purpose is 'the prompt cleanup of hazardous waste sites.'") (quoting *J.V. Peters & Co. v. EPA*, 767 F.2d 263, 264 (6th Cir.1985)). As the Third Circuit has stated *en banc:*

The purpose of [§ 9613(h)] is to ensure that there will be no delays associated with a legal challenge of the particular removal or remedial action selected under section [9604] or secured ... under section [9606]. Without such a provision, responses to releases or threatened releases of hazardous substances could be unduly delayed, thereby exacerbating the threat of damage to human health or the environment.

*Clinton County Comm'rs*, 116 F.3d at 1024 (citing H.R.Rep. No. 99-253(V), at 25-26 (1985)). "In enacting section 113(h), 'Congress intended to prevent time-consuming litigation which might interfere with CERCLA's overall goal of effecting the prompt cleanup of hazardous waste sites.'" *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 674 (8th Cir.1998) (quoting *United States v. City and County of Denver*, 100 F.3d 1509,1514 (10th Cir.1996)); *see Barmet Aluminum*, 927 F.2d at 293 (" 'Judicial review itself slows the process down.'") (quoting *Schalk v. Reilly*, 900 F.2d 1091, 1097 (7th Cir.1999)). The D.C. Circuit has noted "that pre-enforcement review would be a significant obstacle to the implementation of response actions and the use of administrative orders." *OCAW*, 214 F.3d at 1382 (citing S.Rep. No. 11, 99th Congress 1, 58 (1985)). The goals underlying section 113(h), moreover, are equally at stake whether a pre-enforcement due process challenge seeks review of a specific EPA order or raises a broader attack on the statute:

If the court were to consider the constitutionality of CERCLA, an injunction would have to issue to prevent any po-

---

**7.** *Cf. United States v. Any and all Radio Station Transmission Equip.*, 207 F.3d 458, 463 (8th Cir.2000) ("Whichever way it is done, to ask the district court to decide whether the regulations are valid violates the statutory [review] requirements. As [we have stated], [w]here exclusive jurisdiction is mandated by a statute, a party cannot bypass the procedure by characterizing its position as a defense to an enforcement action. The exclusive jurisdiction of the courts of appeals cannot be evaded simply by labeling the proceeding as one other than a proceeding for judicial review.") (citations omitted).

tentially unconstitutional actions from taking place. Such injunctions are precisely the type of impediment that the preenforcement review was meant to prohibit. *South Macomb*, 681 F.Supp. at 1251.

The structure of CERCLA evidences congressional intent to preclude a constitutional challenge to the statute while removal or remedial action, or a section 106 order, is pending enforcement. "On its face, then, section 113(h) precludes contemporaneous challenges to CERCLA cleanups." *MESS*, 47 F.3d at 328. Allowing peripheral challenges to proceed while a response action is pending completion or enforcement would undermine the goal of rapid abatement of hazardous waste sites:

> Section 113(h) protects the execution of a CERCLA plan *during its pendency* from lawsuits that might interfere with the expeditious cleanup effort. This result furthers the policy underlying CERCLA by allowing a quick response to serious hazards. Congress concluded that the need for such action was paramount, and that peripheral disputes . . . may not be brought while the cleanup is in process.

*Id.* at 329 (emphasis in original) (citation omitted). As the Seventh Circuit has observed, "[t]he obvious meaning of this statute is that when a remedy has been selected, no challenge to the cleanup may occur prior to completion of the remedy." *Schalk v. Reilly*, 900 F.2d 1091, 1095 (7th Cir.1990).

One also cannot ignore the context of this litigation, and specifically GE's ongoing interaction with EPA over remediation at several locations, especially the contentious debate over the Hudson River clean-up. GE raises this broad challenge while three sites where EPA deems GE to be a PRP are currently in the process of remediation. EPA has sought "voluntary performance" by GE of a remedy that EPA selected and approved for clean-up work at the Fletcher Paint Works site in New Hampshire. Am. Compl. ¶ 46. GE also believes that "EPA will soon issue a unilateral order compelling GE to do the work." *Id.* EPA has served a section 106 order on GE for remediation of GE's former Hoboken, New Jersey, lamp factory, and has ordered GE to demolish the factory. *Id.* ¶ 34. Finally, GE alleges that "the EPA recently announced that it is now considering dredging projects" to remove PCBs from the Hudson River, a project GE contends will take a decade and cost hundreds of millions of dollars to complete, and as to which GE fears "EPA will invoke CERCLA's unilateral orders regime and require GE to implement a massive dredging remedy." *Id.* ¶¶ 41–42.[8] The fact that GE believes that EPA response actions or orders *are about to be imposed* only underscores the concern that GE brings this sweeping attack on CERCLA as an indirect means to challenge EPA's actual or imminent response actions and orders.

But as explained above, Congress's express purpose in enacting § 9613(h) "was to 'prevent private responsible parties from filing dilatory interim lawsuits which have the effect of slowing down or preventing the EPA's cleanup activities.'" *United States v. Colorado*, 990 F.2d at 1576 (quoting H.R.Rep. No. 253(I), 99th Cong.2d Sess. 266 (1985)). Indeed, premature judicial review "would force the EPA—against the wishes of Congress—to engage in 'piecemeal' litigation" and ex-

---

**8.** In fact, EPA filed its Record of Decision ("ROD") with a final remedial plan for the 40–mile stretch of the upper Hudson River on February 1, 2002. The plan calls for dredg-ing 2.65 million cubic yards of contaminated sediment, in order to remove 75,000 tons of PCBs from the river. *See* ww.epa.gov/region02/news/2002/02005.htm.

pend its limited resources inefficiently. *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1390 (5th Cir.1989); *see also Barmet Aluminum*, 927 F.2d at 293 ("The bar of pre-enforcement review also serves other objectives, *e.g.,* avoiding piecemeal litigation and conserving EPA's limited resources."). Congress designed the statute to provide EPA with "the authority and the funds necessary to respond expeditiously to serious hazards without being stopped in its tracks by legal entanglement before or during the hazard cleanup." *Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1019 (3rd Cir.1991). Permitting GE's due process challenge while EPA seeks to clean up the Hudson River and Fletcher Paint Works sites raises the possibility of interference with or delay of remediation plans, which is just what section 113(h) is designed to avoid.[9]

GE's constitutional attack on CERCLA is thus premature. The sites reviewed in GE's amended complaint have yet to be fully remediated, and both the language and legislative history of section 113(h) support the conclusion that "federal courts are deprived of subject matter jurisdiction where remedial action has not been completed," and "where a remedial action is to be undertaken, no action may be brought." *Schalk*, 900 F.2d at 1096. "This provision is not intended to allow review of the selection of a response action prior to completion of the action." H.R.Rep. No. 253(III), p. 3046. Congress made a deliberate and reasoned choice to require judicial review, even of constitutional challenges, to await the completion of remediation or EPA enforcement action. "EPA removal and remedial actions are designed to deal with situations involving grave and immediate danger to the public welfare. As we have noted, Congress apparently concluded that delays caused by citizen suit challenges posed a greater risk to the public welfare than the risk of EPA error in the selection of methods of remediation." *Clinton County Comm'rs*, 116 F.3d at 1025. As the Eleventh Circuit has emphasized:

> CERCLA's general objective is to protect the public health and environment against improper disposal of hazardous wastes. Section 113(h) furthers that objective by preventing EPA remedial actions from being delayed by litigation. Given the litigiousness of our society, the virtually limitless ability of lawyers to construct constitutional challenges, and the protracted nature of litigation, it is not absurd for Congress to have assigned a higher priority to the prompt cleanup of a hazardous waste site than to the immediate adjudication of a claim challenging the remedial action.

*Broward Gardens*, 311 F.3d at 1076 (citations omitted).

Permitting GE's pre-enforcement challenge would encourage other PRPs saddled with EPA remediation orders to circumvent 113(h) by casting challenges in the same constitutional terms—if EPA's

---

9. The extensive discovery sought by GE to support its constitutional challenge to CERCLA is a prime example of such interference. GE has argued that its "due process claims ... cannot be resolved in the absence of a fully developed record on the myriad factors posed by the constitutional inquiries at the heart of this case. A record is thus essential to ascertain the extent of the deprivation effected by the issuance of [administrative orders], the risk of error inherent in the [ ] regime, the cost of providing a meaningful hearing to [EPA order] recipients, and the Government's interest in failing to provide such a hearing." Pl. Opp. to Motion to Stay Discovery at 5. The breadth of the discovery sought by GE simply reinforces the congressional concern that pre-enforcement litigation challenging EPA actions would burden EPA's limited resources, redirecting time and resources away from hazardous waste remediation.

interpretation and application of CERCLA is unconstitutional here, it is arguably unconstitutional with respect to virtually any other PRP at any other hazardous waste site.[10] The purpose and structure of CERCLA and specifically section 113(h) offer strong evidence that Congress intended to postpone challenges like GE's constitutional claim until EPA attempts to enforce its removal or remedial action or section 106(a) order, or until remediation is complete.

## IV. Meaningful Review

GE can obtain "meaningful review" of its due process challenge to CERCLA after EPA seeks enforcement of its orders or site remediation is complete; merely delaying the constitutional challenge will not undermine GE's ability to raise it. *Broward Gardens*, 311 F.3d at 1076 n. 10 ("Nothing in our decision prevents these or any other plaintiffs from refiling this [constitutional challenge] or a similar complaint once the cleanup at the site is completed."). Several courts have held that pre-enforcement due process challenges (similar to GE's) to other environmental statutes—statutes modeled on CERCLA— can be reviewed meaningfully after EPA seeks enforcement. *See Hoffman Group, Inc. v. EPA*, 902 F.2d 567, 570 (7th Cir. 1990) ("Hoffman will have an opportunity to present any constitutional arguments if the administrative law judge approves the proposed EPA penalty or if the EPA seeks judicial enforcement of the compliance order."); *Southern Pines Associates v. United States*, 912 F.2d 713, 716–17 (4th Cir. 1990) ("[W]e are persuaded that Congress meant to preclude judicial review of compliance orders under the [Clean Water Act] just as it meant to preclude pre-enforcement review under [the Clean Air

Act] and CERCLA.... Southern Pines and VICO will have an opportunity to make their constitutional arguments at any enforcement proceeding before they are subjected to any injunction or penalty."); *see also Laguna Gatuna, Inc. v. Browner*, 58 F.3d 564, 566 (10th Cir.1995) ("Judicial review of every unenforced compliance order would undermine the EPA's regulatory authority."). So, too, GE can obtain judicial review of its due process challenge *before* any injunctions, fines, penalties, or punitive damages are imposed—and hence before there is any deprivation of a property interest. As the Supreme Court made clear in *Thunder Basin*, 510 U.S. at 215, 114 S.Ct. 771, although delayed, constitutional challenges to statutes can still receive meaningful review in federal court after administrative action. This holds true for GE's broad constitutional challenge to CERCLA as well.

## V. Facial Constitutional Challenges

Seeking to bypass the clear prohibition on pre-enforcement judicial review under section 113(h), GE frames its suit as a *facial* constitutional challenge to provisions of CERCLA. The federal courts of appeals, however, have rejected attempts to circumvent judicial review limitations in other environmental statutes by raising, under 28 U.S.C. § 1331, constitutional challenges to the statute itself. *See, e.g., Nebraska v. United States*, 238 F.3d 946 (8th Cir.2001); *Michigan Assoc. of Homes and Services for the Aging v. Shalala*, 127 F.3d 496 (6th Cir.1997); *Missouri v. United States*, 109 F.3d 440 (8th Cir.1997); *Virginia v. United States*, 74 F.3d 517 (4th Cir.1996). Indeed, the D.C. Circuit has criticized clever plaintiffs who attempt "to short-circuit the administrative [review] process" in a statute by casting their com-

---

**10.** GE would perhaps differentiate between emergency and non-emergency settings, but even the latter category encompasses a potentially vast number of sites and PRPs.

plaint differently. *Sturm, Ruger & Co. v. Chao,* 300 F.3d 867, 876 (D.C.Cir.2002).

In *Virginia v. United States,* the Commonwealth of Virginia attempted to evade the Clean Air Act's judicial review provision by casting its complaint as a constitutional attack on the Act itself:

> The question before us in this case is whether Virginia, by framing its complaint as a constitutional challenge to the CAA, may circumvent direct review in the circuit court under CAA § 307(b)(1) and litigate in district court under 28 U.S.C. § 1331.... Virginia argues first that it 'does not seek a review of any final EPA action'; rather, it says, its 'constitutional challenge is directed to the statute itself.'

74 F.3d at 522 (citation omitted). Citing *Thunder Basin,* the Fourth Circuit held that Virginia could not avoid review in the court of appeals by challenging the Act's constitutionality in district court under federal question jurisdiction: "There is simply no impediment to the adjudication of constitutional issues through petitions for direct review of final agency action in the circuit courts." *Id.* at 523. Likewise, the Eighth Circuit dismissed a similar attempt. "We cannot accept the argument that Missouri sought only to challenge the constitutionality of the statute completely apart from EPA action." *Missouri,* 109 F.3d at 441. That court reasoned:

> EPA has issued five formal deficiency findings to Missouri so far under the CAA. Missouri seeks to nullify the effects of these actions by having the sanctions they portend declared unconstitutional. While it is true that Missouri's complaint questions the constitutionality of the overall sanctions scheme of the CAA, this challenge is not separate and apart from EPA action.

*Id.* at 442.

GE's amended complaint details EPA's enforcement actions under CERCLA, including response actions and section 106 orders, with respect to alleged GE hazardous waste sites. *See* Am. Compl. ¶¶ 31–47. Although GE labels these references simply as "illustrations" of due process violations, it is difficult to separate GE's broader constitutional challenge from these specific EPA actions. A facial challenge to CERCLA, built on several "illustrations" of due process violations relating to EPA's remedial efforts at specific sites, poses the same or even a greater threat to EPA's environmental response efforts as does a challenge to a specific order. Simply raising a facial challenge to a statute should not be a means to avoid the statute's prohibition on pre-enforcement review. In *Michigan Assoc. of Homes and Services for the Aging v. Shalala,* the Sixth Circuit concluded that a facial due process attack on Medicaid regulations was not an exception to a provision delaying judicial review:

> The Association and an amicus attempt to avoid [the judicial review limitation] by arguing that the statute's restrictive language applies only to individual claims for benefits or constitutional challenges that are intertwined with claims for benefits. This facial challenge, they argue, should be treated differently. We disagree.... The purposes of exhaustion ... would be undermined by allowing the Association to avoid presenting its specific claims to the Secretary.

127 F.3d at 500.

The Supreme Court has similarly rejected the idea that distinctions should be drawn under statutory review provisions between substantive challenges to the merits of an agency action and procedural challenges that purport not to challenge a particular agency determination. *See Heckler v. Ringer,* 466 U.S. 602, 614, 104

S.Ct. 2013, 80 L.Ed.2d 622 (1984) (simply because a claim can be construed as "procedural" does not make it cognizable in district court under 28 U.S.C. § 1331). In *Weinberger v. Salfi*, 422 U.S. 749, 760–761, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Court concluded that a constitutional challenge to the Social Security Act was a "claim arising under" the Act even though it was in one sense also a claim arising under the Constitution.

Thus, whether a statute precludes or delays judicial review of a particular claim should not turn on some artificial or clever distinction put forth by the party attempting to evade the statute's judicial review limitation—whether constitutional versus statutory, facial versus as-applied, or procedural versus substantive. Section 113(h) draws no such distinctions—it applies to "any challenges." To import such a distinction into section 113(h) for facial constitutional challenges to CERCLA—or even for GE's self-described challenge to the "interpretation and application" of CERCLA—ignores the language and purpose of section 113(h)'s postponement of judicial review.

## VI. *Reardon v. United States*

GE's reliance on the First Circuit's decision in *Reardon v. United States*, 947 F.2d 1509 (1st Cir.1991) (en banc), is unpersuasive. That case addressed a unique provision of CERCLA that allows EPA to place a lien on property, which was the subject of a challenge on due process grounds. The Court's decision is properly confined to that specific setting.

In *Reardon*, the EPA removed hazardous PCBs from the Reardons' property and then filed a notice of lien on the property pursuant to 42 U.S.C. 9607(*l*) as part of an effort to recover costs. *See* 947 F.2d at 1510. The Reardons then sought an injunction in district court, claiming that "EPA's imposition of the lien without a hearing violated the due process clause of the fifth amendment." *Id.* at 1511. The First Circuit concluded that section 113(h) did not bar review of a due process challenge to CERCLA itself.

The court construed section 113(h) narrowly, and observed that the challenge to the statute did not "fit into the literal language of § 9613(h)":

> That section refers to "challenges to removal or remedial action selected under section 9604 of this title." Under our reading, it divests federal courts of jurisdiction over challenges to EPA's *administration* of the statute—claims that EPA did not "*select* [ ]" the proper "removal or remedial action," in light of the standards and constraints established by the CERCLA statutes. The Reardons' due process claim is not a challenge to the way in which EPA is administering the statute; it does not concern the merits of any particular removal or remedial action. Rather, it is a challenge to the CERCLA statute itself—to a statutory scheme under which the government is authorized to file lien notices without any hearing on the validity of the lien.

*Id.* at 1514 (emphasis in original). The court emphasized that

> it is important to make clear that we are not holding that *all* constitutional challenges involving CERCLA fall outside the scope of § 9613(h). A constitutional challenge to EPA administration of the statute may be subject to § 9613(h)'s strictures. Such a claim may well be a "challenge[ ] to removal or remedial action selected under 9604 of this title," and may thus fall within § 9613(h)'s bar. We find only that a constitutional challenge to the CERCLA *statute* is not covered by § 9613(h).

*Id.* at 1515 (emphasis in original).

The statutory language of section 113(h) does not itself distinguish between two

types of constitutional claims, one challenging the administration of CERCLA and one challenging the statute itself. Although the court in *Reardon* downplayed the fact that section 113(h) precludes judicial review of "any challenges" to removal or remedial action "in any action" (except one of the five enumerated exceptions), the breadth of the statutory language cannot be ignored. The use by Congress of such expansive, all-encompassing language undermines the view that there is some distinction implicit within section 113(h) between a challenge to the administration of the statute and a challenge to the statute itself. Moreover, as is true of GE (which attacks the administration and interpretation of CERCLA by EPA), so, too, it is true that the Reardons were in effect challenging EPA's administration of CERCLA—*i.e.*, the choice by EPA to file a notice of lien on their property.

The focus in *Reardon* was on an interpretation of the phrase "removal or remedial action selected under section 9604" in section 113(h). The court found that a due process challenge to the lien provision of CERCLA did not fall within that language and thus the federal courts were not divested of jurisdiction to hear such a challenge. *See* 947 F.2d at 1515. Here, of course, GE's challenge is to the section 106 administrative order regime, which is an express part of the limitation on judicial review set out in section 113(h)—no federal court shall have jurisdiction "to review any order issued under section 9606(a) of this title [ ] in any action ...." Hence, *Reardon* is properly confined to the unique lien provision challenged there, and does not govern here.

Importantly, the panel decision in *Reardon* recognized that "the cleanup of the property is substantially complete, so litigation will cause no delay." *Reardon v. United States*, 922 F.2d 28, 1990 WL 209207, * 5 (1st Cir.1990). Thus, the setting was such that the court could find that section 113(h) did not bar a pre-enforcement constitutional challenge to the lien provision without concern that abatement of the hazardous waste site might be delayed. Of course, the sites EPA has ordered or may order GE to remediate are far from being cleaned up. Unlike *Reardon*, then, where the property was substantially abated, this case truly involves pre-enforcement judicial review.

Moreover, the actual harm to the Reardons—the lien on their property—was an immediate deprivation of a property interest that the court concluded could not be effectively challenged when EPA brings an enforcement action. The Reardons were immediately deprived of a property interest—the unencumbered use of their property—and that harm would continue until the lien was released. As the Supreme Court noted in *Connecticut v. Doehr*, 501 U.S. 1, 11, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), subjecting property to a lien clouds its title and impairs the owner's ability to sell or mortgage the property. Indeed, the lien could tie up the property for years before the owner could get a hearing. "Since the government may take its own sweet time before suing, and since the removal or remedial action may itself take years to complete, the lien may be in place for a considerable time without an opportunity for a hearing." *Reardon*, 947 F.2d at 1519.

Here, in contrast, the alleged harm to GE will not occur until after EPA attempts to enforce its orders in court. The penalties, fines, or punitive damages GE fears under section 107 can only be imposed after EPA seeks to enforce its orders in court, and even then, the district court has discretion as to whether fines and penalties will be imposed, and if so how much. *See* 42 U.S.C.

§ 9607(c)(3). Hence, before any fines or punitive damages can be imposed, there is an opportunity for meaningful judicial review to consider challenges or defenses to EPA action. *See, e.g., Barmet Aluminum*, 927 F.2d at 294–96; *J.V. Peters & Co. v. EPA*, 767 F.2d 263, 266 (6th Cir. 1985) (PRPs "can suffer no deprivation until the adjudication of the section 107 litigation, however, and they will have the full opportunity to argue liability at that time").

GE's broad challenge to CERCLA is different from the challenge in *Reardon*, where the unique factual circumstances appear to have caused the court to impose a stricter standard for determining whether Congress intended to preclude judicial review. The court in *Reardon* construed 113(h) as completely precluding judicial review, rather than merely postponing it: "We read § 9613(h) in light of the Supreme Court's oft-repeated pronouncement that 'where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear.'" *Id.* at 1514 (citing *Webster v. Doe*, 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988)). As explained in *Webster*, "[w]e require this heightened showing in part to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." 486 U.S. at 603, 108 S.Ct. 2047. Because a judgment in EPA's subsequent enforcement action "would render moot the Reardons' due-process-based request for injunctive relief against the filing of the lien, since it

will decide whether or not the Reardons are liable under CERCLA," the court concluded that "the effect of section 113(h) is to preclude review altogether." 947 F.2d at 1515 n. 1. Applying this "heightened showing" standard, the First Circuit "d[id] not believe that the statute expresses a clear congressional intent to preclude the type of constitutional claim the Reardons are making—a challenge to several statutory provisions which form part of CERCLA." *Id.* at 1515.

Such a "heightened showing" requirement should not apply here. Section 113(h) merely postpones review of GE's constitutional claims; it does not preclude review altogether. Moreover, the Supreme Court's decision in *Thunder Basin* came down three years after the ruling in *Reardon*. In *Thunder Basin*, which involved a constitutional challenge to the Mine Act, the Supreme Court explained that "[i]n cases of delayed judicial review of agency actions, we shall find that Congress has allocated initial review to an administrative body *where such intent is fairly discernable in the statutory scheme.*" *Thunder Basin*, 510 U.S. at 207, 114 S.Ct. 771 (emphasis added).[11] This "fairly discernable" standard is less rigorous than the "heightened showing" standard followed in *Reardon* for statutes that entirely preclude review of constitutional claims. As explained at length above, it is "fairly discernable" from the language, purpose and history of section 113(h) that Congress intended to postpone review of the type of pre-enforcement constitutional challenge to CERCLA that GE raises here

**11.** The Supreme Court explained in *Thunder Basin* that "[b]ecause court of appeals review is available [under the Mine Act], this case does not implicate 'the strong presumption that Congress did not mean to prohibit all judicial review.'" 510 U.S. at 207 n. 8, 114 S.Ct. 771 (citation omitted). Recently, the Supreme Court confirmed that it has re-

peatedly drawn a distinction between provisions that completely preclude review, and those that merely postpone it: the "strong presumption against preclusion of review is not implicated by [a] provision postponing review." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 19, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000).

until EPA brings an enforcement action in district court.

Finally, subsequent to the decision in *Reardon,* several courts of appeals, citing *Thunder Basin,* have ruled that claims framed as constitutional challenges to a statute do not circumvent statutory limitations on judicial review. *See, e.g., Nebraska,* 238 F.3d at 948; *MAHSA,* 127 F.3d at 499; *Missouri,* 109 F.3d at 442; *Virginia,* 74 F.3d at 522. Moreover, at least three courts of appeals have ruled, contrary to *Reardon,* that constitutional challenges are within section 113(h)'s postponement of judicial review. *See Broward Gardens,* 311 F.3d at 1070; *Barmet Aluminum,* 927 F.2d at 293; *Aztec Minerals Corp. v. EPA,* 1999 WL 969270, 198 F.3d 257 (10th Cir. 1999). This weight of authority supports the conclusion that GE's pre-enforcement constitutional challenge to CERCLA is barred by section 113(h).

## CONCLUSION

Section 113(h) of CERCLA delays judicial review of GE's broad, pre-enforcement due process challenge to the statute, which cannot be brought until EPA seeks enforcement or remediation is complete. Under the Supreme Court's ruling in *Thunder Basin,* the language of section 113(h), as well as its purpose, structure and legislative history, make it "fairly discernable" that Congress intended GE's constitutional challenge to be postponed. GE is not entirely precluded from raising its due process challenge; it can obtain meaningful review after EPA seeks enforcement of its response actions or remediation plan, including section 106(a) orders. Thus, the Court concludes that section 113(h) deprives this Court of subject matter jurisdiction over GE's challenge to CERCLA.

Accordingly, EPA's motion to dismiss is granted. A separate order will be issued on this date.

## ORDER

Upon consideration of the Environmental Protection Agency's Motion to Dismiss General Electric Company's Amended Complaint, or in the Alternative for Summary Judgement, the various memoranda of the parties and *amicus curiae,* oral argument, and the entire record herein, and for the reasons stated in the Memorandum Opinion issued on this date, it is hereby

ORDERED that the motion is GRANTED because this Court lacks subject matter jurisdiction under 42 U.S.C. § 9613(h), and this action is therefore DISMISSED.

IT IS SO ORDERED.